People of the State of Illinois, Defendant in Error, v.
Dennis Millet, Plaintiff in Error.

**Gen. No. 50,101.**

First District, Second Division.
June 1, 1965.
Rehearing denied June 28, 1965.

Howard T. Savage and Sam Adam, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney of Cook County, Fred G. Leach and George W. Kenney, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a conviction by a jury finding defendant, Dennis Millet, guilty of voluntary manslaughter. He was sentenced to the Illinois State Penitentiary for a term of from 8 to 16 years. He prays that the judgment below be reversed, but that if said judgment is affirmed, that the sentence imposed be reduced.

Prior to April 1963, Katherine King was the girl friend of the deceased, John Ellison. In April she met defendant, Dennis Millet, and he replaced the deceased as her boy friend. He visited her home, a third floor apartment at 4515 South Woodlawn Ave-

nue, nearly every evening. Sometime in June, deceased intruded upon Katherine King and defendant in her kitchen, and a verbal exchange resulted in an altercation between the two men. After Katherine King pulled deceased away, defendant departed. Deceased followed, however, allegedly wielding a butcher knife.

Around 5:00 p. m. on August 6, 1963, deceased parked his auto across the street from 4515 South Woodlawn Avenue, joined Katherine King on her front porch, and delivered a purse to her as a gift. Noticing that deceased appeared to be intoxicated, Katherine King obtained his auto keys and offered to drive him some place—then withdrew her offer and entered the first floor apartment of Cora Rae, a friend, leaving the deceased on the porch. About 6:00 p. m. defendant arrived with three male companions: Lamont Gerling, John Payne and Jacob Martin. The group was met on the porch and led inside by Katherine King. She could not recall any incident with deceased. Defendant testified, however, that deceased seated on a porch step, called, "hello, Mr. Dennis," and followed the group to the first floor apartment. Cora Rae, the occupant, said "you can't come in," and slammed the door. Subsequently, one Ethel Hollinghead arrived and saw deceased on a porch step. He grabbed her arm but she pulled loose and joined the others in the first floor apartment, where Katherine King admonished her, "don't let John in because he has been trying to get in before." Around 6:30 p. m. deceased knocked on the door, requested to use the lavatory, and after Katherine King slammed the door on his foot, urinated in the hallway. He then hollered through the outside window before resuming his porch seat.

Later deceased began to cross the street toward his auto. Shortly thereafter defendant, his three companions and Katherine King walked outside. Defendant testified that he "turned to my right to go north

on Woodlawn toward my automobile." Deceased called, ". . . wait a minute . . . I want to see you," and walked toward defendant who replied, "don't come upon me John because I don't want any more trouble with you." But deceased called, "It's no big thing to come up on you," and quickly returned toward his auto. Defendant walked into the street and, as deceased lifted the trunk cover, warned, "don't do it John, don't come out of there with anything." Deceased replied, "I'm going to take your head off—I'm going to kill you." Defendant then said, "don't do it John" and removed his revolver from his left front pocket and fired three times. Two bullets struck the deceased, one entering the side of the left arm and the other entering the rear of the left shoulder.

A few minutes later, attracted by a gathering crowd, Police Officer Rodney Dawson and his partner arrived and observed defendant about four feet from the auto trunk, clutching his revolver. The trunk contained: tools and a tool box, a spare tire, rags, a jack and a tire wrench. Defendant admitted the shooting and gave his reason as "an argument." About 8:00 p. m., in a police station, defendant admitted following deceased across Woodlawn and firing three times after "Ellison (the deceased) opened up the trunk of his car and reached in as if trying to get a jack. . . ."

Defendant requested a jury trial on consolidated charges of murder and voluntary manslaughter. The State presented the testimony of the widow, Mrs. Grace Ellison, Katherine King, Ethel Hollinghead and Officers Dawson and Barksdale. The defense countered with Katherine King, John Payne, defendant and one, Joe W. Tompson, a second floor resident of 4510 Woodlawn Avenue, who witnessed the shooting from the front window of his second floor apartment, directly over the auto of the deceased.

Defendant was charged with the crimes of murder and voluntary manslaughter. The statutory crime of murder is found in Ill Rev Stats (1963), chapter 38, paragraph 9–1. The statutory crime of voluntary manslaughter is found in Ill Rev Stats (1963), chapter 38, paragraph 9–2. This provision states:

(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or
(2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but this belief is *unreasonable*.

Count 1 of the indictment charged defendant with murder. Count II of the indictment charged defendant with the type of voluntary manslaughter found in section 9(2)(a) of the Criminal Code. Defendant was convicted of voluntary manslaughter as charged in the indictment and brought this writ of error.

Defendant's theory of the case is that the trial court erred in a number of instances. We will review each of these allegations of error separately.

 Defendant's first allegation of error is that there was insufficient evidence introduced to convict

defendant of the offense of voluntary manslaughter, in that the only conclusion that could be reached from the evidence introduced was that defendant was guilty of murder or that the homicide was justifiable by reason of self defense. Defendant in support of this allegation cites People v. Newman, 360 Ill 226, 195 NE 645 (1935); People v. De Rosa, 378 Ill 557, 39 NE2d 1 (1942); People v. Marsh, 403 Ill 81, 85 NE2d 715 (1949); People v. Stacey, 25 Ill2d 258, 184 NE2d 866 (1962); People v. Green, 23 Ill2d 584, 179 NE2d 644 (1962). We do not agree with defendant's first allegation. A review of the above cases indicate that in each of them (except the Green case, which actually affirmed the finding that the defendant was guilty of involuntary manslaughter) the courts predicated their opinion on the fact that time and circumstances permitted the voice of reason to be heard; therefore, the manslaughter instructions and verdict were not proper. We hold that in the instant case there was sufficient evidence presented by the State to convict defendant of voluntary manslaughter either under section 9(2)(a) or section 9(2)(b) of the Criminal Code. As the People point out in their brief, there was evidence introduced that defendant feared he would receive great bodily harm. Katherine King warned defendant that decedent had a gun in his trunk; that decedent said "he would blow defendant's head off and would kill him"; and that decedent opened the trunk of his car and fumbled inside of the trunk for some object. A number of cases outside of this jurisdiction have held that fear resulting from imminent physical harm may cause passion and provocation. Kinard v. United States, 96 F2d 522 (DC Cir 1938); State v. Plummer, 44 NM 614, 107 P2d 319, 320, 321 (1940); McKaskle v. State, 96 Tex Cr Rpt 638, 260 SW 588, 589, 590 (1924); Allison v. State, 74 Ark 444, 86 SW 409, 413 (1904); State v. Doherty, 72 Vt 381, 48 A 658, 663, 664 (1900);

Commonwealth v. Donough, 377 Pa 46, 103 A2d 694, 698 (1954). Thus, there was sufficient evidence for the jury to find defendant guilty of the type of voluntary manslaughter found in Section 9(2)(a) of the Code.

██ ██ We do not, however, have to elaborate on this point, as we further find, contrary to defendant's contention, that the fear experienced by defendant was not so great that defendant could take the life of another. The law applicable to self defense is found in Ill Rev Stat (1963), chapter 38, paragraph 7-1, which states:

> A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.

True, there is no duty on a defendant to retreat from a wrongdoer. People v. Durand, 307 Ill 611, 139 NE 78 (1923). Defendant, however, in the instant situation, affirmatively approached the deceased. He set the stage for the type of violation found in section 9(2)(b) of the Code. We hold therefore, that there was sufficient evidence introduced that defendant, despite his fear of bodily harm, acted unreasonably under the circumstances. The jury heard the evidence and found it was sufficient to convict defendant of voluntary manslaughter.

Defendant's second allegation of error is that the two instructions defining voluntary manslaughter were erroneously given because: (1) there was no evidence

of voluntary manslaughter presented to the jury and, (2) the instructions failed to call attention to the element of self defense. There is no need to consider the first part of this allegation of error as we have already found that there was sufficient evidence of voluntary manslaughter presented to the jury.

To the second part of defendant's allegation, we hold that the jury was adequately apprised of the element of self defense. There were three instructions submitted relative to self defense. Furthermore, the two instructions submitted on the statutory definitions of voluntary manslaughter found in Section 9(2) of the Criminal Code contained a reference to self defense. Section 9(2)(a) states ". . . homicide coupled with passion, provocation, and *without lawful justification.*" Section 9(2)(b) states, ". . . an unreasonable belief in the circumstances to be such that, if they existed, *would justify his use of* force and the killing. . . ." (Emphasis supplied.) We conclude that defendant's three instructions definitive of self defense and two instructions definitive of the offense committed, sufficiently advised the jury of the element of self defense.

The third allegation of error stated by defendant is that the trial court abused its discretion by refusing to require the State to elect the Count of the indictment relied upon for conviction. The law relative to the requirement of an election by the State is that distinct offenses may be charged in the same indictment when they grow out of the same transaction, and that no election is required, except when the offenses charged are actually distinct from each other and do not arise out of the same transaction. People v. Grodkiewicz, 16 Ill2d 192, 157 NE2d 16 (1959). In the instant situation defendant was indicted for murder in Count I and by operation of law the crime of voluntary manslaughter was included as

a lesser offense. People v. Wiggins, 12 Ill2d 418, 147 NE2d 80 (1957). Count II charged voluntary manslaughter as defined in Section 9(2)(a).

In support of his position, defendant cites the case of People v. Stingley, 414 Ill 398, 111 NE2d 548 (1953), where the court stated that there is no duplicity or multiplicity where two or more offenses grow out of the same transaction and are of such nature that the defendant may be found guilty of each. Defendant reasons that he could not be found guilty of both the type of manslaughter found in section 9(2)(a) and also of the type of manslaughter found in section 9(2)(b) and, therefore, Count I was duplicitous and the indictment as a whole was multiplicious. We hold there was no duplicity or multiplicity in the indictment as the offenses arose out of the same transaction and defendant could have been found guilty of each. We further hold that the State did not have to elect the count upon which they intended to proceed for conviction. We agree that the right to demand of the State, an election of counts, may arise even though the indictment is good as to pleading and form. Thus an election may be required, if the court in its discretion, feels that a defendant may be prejudiced in his defense. Here there was no duplicity or misjoinder by the State, as the offenses alleged arose out of the same transaction. More important, however, we find defendant was not prejudiced.

■ Defendant's fourth allegation of error is that the failure of the People to expressly charge defendant with the type of manslaughter as found in section 9(2)(b), and their charge in Count II of the type of manslaughter as found in section 9(2)(a), brought about a waiver of all the included charges in Count I, and thus the giving of an instruction applicable to the

type of manslaughter found in section 9(2)(b) was erroneous. At the outset, we find that defendant is proceeding on a false premise. There was no waiver of the included offenses found in Count I. Thus, the jury verdict could have been responsive to either Count I or Count II of the indictment. It was therefore, proper for the trial court to give an instruction defining the count of manslaughter described in section 9(2)(b).

█ Defendant urges, however, that the State had to proceed under Count II of the indictment, as the two types of voluntary manslaughter are antagonistic. Defendant reasons that one type of manslaughter is predicated upon the establishment of reason, while the second is predicated upon a deliberate killing while possessed of an unreasonable belief. Defendant concludes that the trial court should have required an election and thus, by giving both voluntary manslaughter instructions, committed error. As we previously stated, defendant was not prejudiced by the failure of the State to elect. We agree with defendant that the State could have alleviated the alleged problem raised by defendant by either, one, submitting as Count III of the indictment the type of voluntary manslaughter found in section 9(2)(b), or two, submitting to the jury an instruction that the statutory crime of voluntary manslaughter found in section 9(2), subsections (a) and (b) is impliedly included in a charge of murder. We find, however, that the failure of the State to do this was not prejudicial to defendant. Instructions on both types of voluntary manslaughter were submitted. The jury was adequately apprised of the crime for which defendant was found guilty.

█ The fifth allegation of error alleged by defendant is that the trial court's refusal to permit de-

fendant to testify directly as to his state of mind was reversible error. During the course of the testimony of defendant he was asked:

> Q. At the time you left the apartment of Cora Rae, were you afraid that John Ellison—
>
> Mr. Porter: Objection as to the use of the word, "afraid." It's a mental state.
>
> The Court: Sustained.
>
> Mr. Savage: Judge, I hate to do this, but it becomes necessary, to be able to produce the law in this respect for the State's Attorney so he won't make this objection.
>
> Mr. Porter: Objection on other grounds, Your Honor, he's leading the witness.
>
> The Court: I have ruled on it. Proceed.
>
> Mr. Savage: May I produce law on this?
>
> The Court: I will not hear argument at this time.
>
> Mr. Savage: Well, Judge, this may be the epitome of this case.
>
> The Court: Proceed.
>
> Mr. Savage: Q. At the time you pulled the trigger and fired the shot toward John Ellison, did you fear that John Ellison was going to either kill you or commit grave bodily harm upon your person?
>
> Mr. Porter: Objection.
>
> The Court: Sustained.

We agree it is error not to permit defendant to testify as to his thoughts and feelings. People v. Ervin, 342 Ill 421, 174 NE 529 (1930); People v. Biella, 374 Ill 87, 89, 28 NE2d 111 (1940). However, it does not warrant the use of leading questions containing conclusions as to reasonableness and degree of fear, which would invade the province of the jury. People v. Harris, 8 Ill2d 431, 436, 134 NE2d 315 (1956). The action

of the trial court was proper under the circumstances. The questions of defendant's counsel were leading. Even after several objections by the State were sustained by the trial court, defendant's counsel continued using the same form of question. The trial court had a right to call a halt to such questions. Furthermore, there was ample evidence introduced to show the state of mind of defendant. Katherine King had testified that she told defendant to be careful, "because, I think he has a gun in the car." During cross-examination defendant testified that he was afraid of decedent because he had "beaten him before." This was sufficient evidence to show that defendant's state of mind was one of fear. The court and jury did not have to hear any more evidence to corroborate the testimony of defendant and Katherine King. As stated previously defendant is allowed to testify as to his state of mind but in the instant case we hold that the error was minimized and vitiated by the fact that there was sufficient corroborating evidence introduced to the point that little or no prejudice to defendant resulted. The jury was adequately apprised of defendant's state of mind and the error committed was not prejudicial.

Defendant's sixth allegation of error is that the trial court one, erroneously permitted the State's Attorney to conduct an improper and unfair cross-examination of a defense witness; two, erroneously permitted the State's Attorney to misstate the testimony of a witness in the form and guise of a question and to disparage the witnesses; and three, erroneously refused to require the State's Attorney to specify the parts of question and answers of witnesses he objected to, so that confusion existed in the minds of the jurors.

 In considering the first part of defendant's allegation, we agree that there is evidence in the record that the cross-examination of Katherine King went outside the scope of defendant's direct examination.

35

We find, however, from an examination of the record, that while the inquiry may have gone beyond the direct testimony, there was no development of new subject matter and thus any error, if committed, was not prejudicial to defendant.

The second part alleged as error by defendant was that defendant's witness, Joe W. Tompson, stated, "after the shooting of decedent a fellow ran over to the trunk of his car, took a pistol out of it and ran back across the street through an alley," and that the State's Attorney responded by stating, "and all of a sudden somebody came running out and reaching into the trunk, took a gun out of the trunk . . . is this what you would have us believe?" We hold that this was proper cross-examination by the State. There was no evidence of any phantom thief introduced by defendant on direct examination of this witness.

We now direct our attention to the third part of defendant's allegation of error. During the questioning of the defendant by his counsel, a question was asked and an answer was given and heard by the jury:

Q. And what, if anything, did she say at that time?
A. I was in the other room and all I heard was, "you can't come in," and I heard the door, I heard her slam the door, but I had stepped into the other room of the apartment and didn't actually see this encounter or whatever was happening.

When the answer was completed, the State's Attorney said "Objection" and the Judge said "Sustained." Defense counsel stated to the court that he did not know to what the objection was directed, nor to what the objection was sustained. The court stated that the record was "quite clear" and suggested to defense counsel that he ask another question. Defendant contends that neither defense counsel nor the jury knew,

from the State's Attorney's objection and the Court's order sustaining it, what was objectionable and what was proper, and what was to be considered by them; that the tactic of waiting until after an answer to a question is completed before making an objection to the question, is unfair and improper; and that where an answer to a question contains several competent parts an objection is improperly sustained when the objector fails to specify the part or parts objected to. We rule that the general objection questioned the competency, relevancy and materiality of the entire answer because the answer did not contain what Cora Rae said and was properly sustained. Thus, we hold that proper judicial control, as to the examination of witnesses, was exercised by the court.

The seventh allegation of error by defendant was that the trial court, one, erroneously instructed the jury on the law of self defense and two, erroneously refused an instruction on the meaning of the word "assault," which the defendant wanted inserted in one of his self defense instructions. As to the first part of defendant's allegations, we hold that the three instructions on self defense which were submitted to the jury adequately apprised the jury of that defense.

 Considering the second part of the defendant's allegation, we note that defendant tendered the following instruction:

> The court instructs the jury as a matter of law, that they have a right to take into consideration all previous threats or assaults made on the defendant, if any are shown by the evidence, together with all the other evidence in the case in determining whether or not the defendant, at the time he mortally wounded the deceased, reasonably believed he was about to lose his own life or about to receive great bodily harm.

37

This instruction was refused. Defendant observes that State's witness Katherine King, testified that about two months before the date of the homicide, the deceased had attacked defendant, physically assaulted him and had grabbed one of her butcher knives, upon seeing defendant waiting outside, and had gone out of her house with it. Defendant contends there was ample evidence in the record of a prior assault upon defendant by Ellison and of threats by Ellison before the shooting, and that the jury should have been instructed to take the assault or assaults and the threats into consideration on the question of self defense. Defendant, in support of his contention, cites Wiggins v. People, 93 US 465 (1876) where the United States Supreme Court held that under certain circumstances, even uncommunicated prior threats are admissible as evidence. In that case, they were held to be admissible for the purpose of aiding the jury to determine who made the first assault. That case is inapplicable, as there was, in the instant case, evidence submitted of the prior assault, and there was no controversy as to who made it. Defendant also cites Sharp v. People, 29 Ill 464 (1862) as authority for his position. This case is likewise inapplicable for the same reasons discussed above. Thus, we hold that the refusal of this instruction was not erroneous.

Defendant finally alleges that the sentence of defendant from 8 to 16 years is unduly severe and the court should reduce the sentence pursuant to Ill Rev Stats (1963), chapter 38, paragraph 121.9(b)(4). We disagree with defendant that the sentence of 8 to 16 years in the penitentiary was excessive. The record reveals by way of aggravation that while separated from his wife, he was involved with Katherine King and further that he was carrying a deadly weapon on his person, which he used when the occasion arose. We

believe that there is insufficient basis for interference under the record presented and that the sentence is not unduly severe.

Judgment affirmed.

BURKE, P. J. and BRYANT, J., concur.