**People of the State of Illinois, Plaintiff-Appellee, v. Phil Owens, Defendant-Appellant.**

**Gen. No. 49,940.**

First District, First Division.

July 11, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn, Mort Zwick and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Carmen V. Speranza, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

After a jury trial, defendant was found guilty of voluntary manslaughter. He was sentenced to the penitentiary for a period of from 5 to 10 years. On appeal, defendant contends that the State failed to prove beyond all reasonable doubt that defendant's fear that he would suffer great bodily harm at the hands of his aggressor was unreasonable. The Criminal Code provision in point is "Article 7—Justifiable Use of Force; Exoneration," which provides:

> "§ 7–1.  Use of Force in Defense of Person.]  A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably

believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

On October 26, 1963, and after a four-hour period of excessive consumption of intoxicating liquors in defendant's home, an argument developed between defendant and his son-in-law, Walter Powell. In an effort to end the quarrel, defendant walked into the kitchen and was followed by his son-in-law, who was there killed by defendant in a struggle.

Rosie Lee Powell, the widow of the decedent and a daughter of defendant, testified for the State. On October 26, 1963, she was in the home of her mother and father at 441 East 41st Street, and present were the defendant (Phil Owens), her mother, herself, Willie Tutson (a friend of the decedent), Annie B. Russell (her sister), and the decedent, and they had all been drinking. A quarrel ensued between her father and mother, and as her mother was about to give coffee to Willie Tutson, her father knocked it out of her hand. "Tutson and my father were arguing and my husband pushed Tutson out of the way saying that he could do more with him than Tutson could. My father at this time had retreated to the kitchen. My husband told me to take my mother from the room. I heard my sister holler, 'Oh, Dad, you done killed Walter.' I came back into the room and my father was standing over him with a knife. He later died at Provident Hospital at 3:20 a. m."

On cross-examination, she testified as to the excessive consumption of liquor. "My father, Willie Tutson, and my husband were drinking. When I left, my husband wasn't sober but wasn't drunk. . . . There were two arguments. The first one started when my mother asked my father to move the dresser. Willie Tutson and my father had some words about the dresser then my husband told my father, 'Old man, sit down.' They settled

110

the argument, shook hands and started to drink again. I was outside when the altercation between my husband and father took place. I heard my husband say to my father, 'You too old a man to carry on like that.' I heard my husband tell Willie Tutson he could do more with him than he (Tutson) could. My husband weighed 250 to 261 pounds. He was a big, strong man."

Willie Tutson, also a witness for the State, testified as to the excessive drinking and the quarrel between the defendant and the decedent. "Walter Powell then came in and asked his wife to take Mrs. Owens out, pushed me back and said to me about Owens, 'I can do more with him than you can.' Mr. Powell then raised his hands and said to Owens, 'You too old a man', then Owens stabbed Powell in the shoulder. I was seven feet away. The stabbing occurred in the living room."

On cross-examination, he testified there were "two hours between the first and second arguments. Owens and I drank in between the arguments. I was tipsy from the liquor I drank at that time. At the time of the final argument I told Owens he didn't stick to his promise not to argue anymore; then Powell came in and pushed me down, got about a foot and a half away from Owens, raised his hand against Owens and pointed at him. I saw Owens stab Powell. About three minutes elapsed between the time Powell pushed me aside and the time Owens stabbed him." On redirect, he testified, "Mr. Powell did not have a weapon in his hand at the time he was stabbed."

The evidence for the defense consisted of the testimony of the defendant and Annie B. Russell, another daughter of defendant. Defendant testified as to the excessive drinking, and that "then I called my wife to come to me and Walter Powell told her if she didn't want to go she didn't have to. I told him I had been married 36 years and he had no business saying anything about what I say to my wife. That got him angry. He came in the

kitchen, grabbed me by the arm. I didn't know what he was doing. I didn't intend to kill him. I intended to cut him to keep him off me. I am 66 years old, five foot nine and 149 lbs. Powell had previously told me he weighed 250 lbs. The fight took place in the kitchen. I had been there for 2½ minutes before I was attacked. I was walking away from Walter Powell. He came in the kitchen behind me and said, 'Old man I will shake you to death.' I was afraid of Walter Powell. I never intended to kill Walter Powell."

On cross-examination, he testified, "Just prior to the stabbing Walter pushed Tutson out of the way and then he grabbed me under both arms and started shaking me."

Annie B. Russell testified, "Walter told daddy to lie down and daddy told Walter that he wasn't speaking to him. Tutson then told Walter if he got into trouble in Chicago he couldn't get him out of it. Tutson called to Walter who pushed him (Tutson) around. My father went into the kitchen. Walter went into the kitchen, grabbed my father under both arms and they tussled by the sink. My father picked up the knife that was on the sink and hit Walter with it on the side of the neck. My father and Walter were drunk and Tutson was high."

On cross-examination, she testified, "I was in the bedroom doorway looking at the time of the stabbing. Walter did not have a weapon. They were tussling. My brother-in-law grabbed my father under both arms. They were facing each other. They were about two feet apart."

Defendant argues that the issue is solely "whether this fear of great bodily harm by the defendant was a reasonable one under the facts. . . . The deceased, Walter Powell, was a big, strong man. His wife estimated his weight at 250 to 260 pounds and that he was 35 years of age. . . . Phil Owens was, at the time of the occurrence, 66 years old, five feet nine inches tall and weighed 149 pounds. It certainly cannot be seriously contended

112

that the physical disparities between the defendant and his son-in-law are insufficient to place a reasonable fear in the defendant's mind of great and serious bodily harm if his son-in-law should decide to do battle with him."

As argued by the State, whether a killing is justified under the law of self-defense is always a question of fact to be determined by the jury under proper instructions. (People v. Jordan, 18 Ill2d 489, 165 NE2d 296 (1960); People v. Millet, 60 Ill App2d 22, 208 NE2d 670 (1965); People v. Golson, 392 Ill 252, 64 NE2d 462 (1946).) In People v. Jordan, the Supreme Court affirmed a judgment of murder against a plea of self-defense and said (p 492):

> "In order that a killing be justified on the grounds of self-defense it must appear that the danger was so urgent and pressing that in order to save the defendant's own life or to prevent his receiving great bodily harm the killing of the other was absolutely necessary and it must appear also that the person killed was the assailant or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given."

In People v. Bush, 414 Ill 441, 111 NE2d 326 (1953), the Supreme Court said (p 444):

> "We have repeatedly held that one who is unlawfully assaulted and put in apparent danger of his life or of great bodily harm need not attempt to escape but may repel force with force, even to the taking of assailant's life, if necessary or apparently so, to prevent bodily harm."

In the instant case, it is not contended that decedent had or threatened to use any weapon of any nature. The physical proportions and ages of the decedent and the defendant were obviously disparate, and the

advantage was with decedent. They had been quarreling off and on for a number of hours, with each being the assailant from time to time. It is also not disputed that the defendant struck the decedent with a knife and inflicted the mortal wound, which action defendant explains was because "I was afraid of Walter Powell." Whether this killing was justified was a question of fact to be determined by a jury under proper instructions, and "once a jury has decided this question and has reached a verdict this court will not disturb that finding unless the evidence is palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory that it justifies entertaining a reasonable doubt of the defendant's guilt." (People v. Jordan, supra, pp 492, 493.)

No contention has been raised as to whether the jury was properly instructed, and as there was sufficient evidence presented to the jury to establish defendant's guilt, beyond a reasonable doubt, of the crime of voluntary manslaughter, and as we cannot say that the evidence is palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory that it justifies entertaining a reasonable doubt of the defendant's guilt, we see no basis for substituting our judgment for that of the jury.

Finally, defendant questions the severity of the sentence imposed, urging that he had a previous unblemished record and was "an honest, upright citizen who raised his family, worked hard and feared God, . . . is 68 years old and has been incarcerated away from his family since November 25, 1963, and has been sentenced since July 1, 1964." Defendant further argues that "his crime at most is one of being in greater fear than he should have been. Under these facts the trial court should have sentenced defendant to a sentence containing a minimum of one year."

The State argues that as there is nothing in the record to indicate that the sentence is manifestly excessive, the

sentence should be allowed to stand. In People v. Cage, 34 Ill2d 530 (1966), our Supreme Court recently said (p 535):

> "The power lately given reviewing courts in this State to reduce sentences was clearly not intended as a substitute for a fair trial. Exercise of such power is intended for and restricted to the circumstances indicated in People v. Taylor, 33 Ill2d 417."

In People v. Taylor, 33 Ill2d 417, 211 NE2d 673, in discussing the power granted to reviewing courts to reduce sentences imposed by trial courts where circumstances warrant, it is said (p 424):

> "Such authority should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals."

With these pronouncements in mind, we believe the circumstances portrayed by this record, in view of the age of defendant, with no previous criminal record, warrant the exercise by this court of the power to "reduce the punishment imposed by the trial court." Ill Rev Stats 1963, ch 38, § 121–9(b)(4).

For the reasons given, the conviction of the defendant is affirmed and the sentence of 5 to 10 years in the penitentiary is reduced to 2 to 4 years in the penitentiary. Therefore, the judgment of the Criminal Division of the Circuit Court of Cook County, as modified, is affirmed.

Affirmed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.