**People of the State of Illinois, Plaintiff-Appellee, v. Louis Pirovolos, Defendant-Appellant.**

Gen. No. 53,288.

First District, Third Division.

October 23, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Kenneth L. Gillis, Special Assistant State's Attorney and Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Louis Pirovolos, was charged with the crime of murder. After a bench trial, defendant was found guilty of voluntary manslaughter and sentenced to a term of 2 to 14 years in the penitentiary. He appeals, contending that he was not proved guilty of voluntary manslaughter beyond a reasonable doubt, or in the alternative, that the sentence imposed was excessive and should be reduced.

On January 14, 1967, defendant and the deceased, among others, were engaged in upholstering seats at a theatre in Chicago. The two men became involved in an altercation at or near a room in the theatre balcony. As a result of this encounter, the deceased received a knife wound in the head, which caused his death. During the altercation defendant used a regular knife, about 10 inches long, while deceased was holding a carpenter's knife described as being half the size of defendant's knife, and

composed mostly of a handle with razor blades protruding about a half to three-quarters of an inch. This carpenter's knife was used by deceased in his work.

Emerick Cor, a fellow employee, testified for the State that while the witness and deceased were talking, defendant came in, swore at the deceased and ordered him to go downstairs. When deceased told defendant that he was not the boss, defendant left the room and the balcony. A few minutes later defendant returned, and resumed giving orders and swearing at the deceased. Defendant then came to the door of the room holding a knife and challenged the deceased. The deceased took off his glasses, dropped a hammer which he had been using, and advanced towards the defendant who had the knife in front of him. Defendant who never entered the room, backed away, and picked up a stool. As the deceased was getting out of the room, he picked up the the back of a seat. The two men scuffled, and defendant swung the knife and struck deceased. When the witness saw him after the incident, defendant had a small cut on his forehead.

Defendant testified that he was in charge of the work. When he ordered deceased to go downstairs, deceased swore at him. When defendant returned from informing the owner about that conversation, deceased was holding a hammer. Deceased then picked up a carving knife, and challenged defendant to make him leave. Defendant was at the door to the room, while deceased was in the room next to the staircase. Defendant ran out, backing up, and he bumped into a stool with a knife on it. He picked up the stool and knife, while deceased was swinging the knife. Deceased dropped the hammer, and picked up the back of a seat. Deceased struck defendant on the head with the knife. Defendant became dizzy, put his hand up, and deceased was stuck with the knife. Defendant had been previously convicted of aggravated assault.

Lawrence Airdo, another coemployee, testified for the defense that when deceased told defendant not to call him names, defendant started to return to the room. Deceased came out of the room, holding the little carpenter's knife and a hammer. Defendant looked scared and backed up, picking up a stool. Deceased dropped the hammer, picked up the back of a seat and struck defendant a glancing blow on the head with the seat. Defendant did not fall, but crouched, arose and struck deceased with the knife. Defendant was about 6 feet from the wall.

The owner of the theatre testified in rebuttal that defendant was not in charge of the work. He also testified that after the incident Airdo said that he did not see anything.

At the conclusion of the evidence, the trial court made a finding that the deceased had made a certain assault on defendant, and that defendant was justified in the use of some force, but that his use of deadly force was unjustified. The trial court also found that defendant was in the process of retreating, but had an opportunity to retreat further.

Defendant was found guilty of voluntary manslaughter under Ill Rev Stats 1965, c 38, § 9–2(b) which provides as follows:

"A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing . . . but his belief is unreasonable."

Defendant first contends that he was not proved guilty of voluntary manslaughter beyond a reasonable doubt, arguing that the evidence established that he was acting in self-defense.

The Criminal Code, Ill Rev Stats 1965, c 38, § 7–1 provides:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

■■ The issue of self-defense is ordinarily one of fact. People v. Owens, 73 Ill App2d 108, 219 NE2d 733 (1966). And while a person who is not the aggressor need not retreat from a place he has a right to be, and may use the force he reasonably believes is necessary to repel the aggressor, People v. Williams, 56 Ill App2d 159, 205 NE2d 749 (1965); People v. Millet, 60 Ill App2d 22, 208 NE2d 670 (1965), the nonaggressor may use deadly force only if the threatened force could cause death or great bodily harm to him. People v. Knox, 94 Ill App2d 36, 236 NE2d 384 (1968).

■ Even if we were to assume, as defendant argues, that he was not the aggressor and therefore had no duty to retreat, the evidence supports the finding of the trial court that defendant was not justified in the use of deadly force. The testimony of Airdo, a defense witness, discloses that, after an exchange of words, defendant had a regular knife and was also holding a stool, while deceased had a hammer in one hand and a carpenter's knife in the other. This carpenter's knife consisted mostly of handle with razor blades protruding about one-half to three-quarters of an inch. According to Airdo, deceased dropped the hammer, picked up the back of a seat, and struck defendant a glancing blow on the forehead with the seat. Although defendant testified that deceased swung at him with the knife, Airdo

testified that deceased used only the back of the seat. According to Airdo's testimony, there was no indication that deceased used the carpenter's knife or that he intended to use it. Consequently, the trial court was justified in determining that defendant used an unreasonable amount of force to defend himself against the deceased, who was using only the back of a seat.

Moreover, the trial court did not make a finding that deceased was the aggressor. While it found that the deceased made a certain assault upon defendant, this is not equivalent to a determination that deceased was the aggressor. The assault by the deceased could well have been in defense of his person. There was ample evidence that defendant aggressively initiated the conflict, was the first to arm himself, and retreated only after deceased emerged from the room in which he was working. Although we have determined that there was sufficient evidence to support a finding that defendant used an unreasonable amount of force, it should also be noted that the record bears out the trial court's finding that defendant had an opportunity to retreat completely from the area without delivering the fatal wound.

We find that defendant was proved guilty of voluntary manslaughter beyond a reasonable doubt.

Defendant next contends that his sentence of two to fourteen years is excessive. He particularly urges that the maximum part of the sentence be reduced by this court. While this court has the authority to reduce sentences, (Supreme Court Rule 615(b) (4), Ill Rev Stats 1967, c 110A, § 615), we do not believe that the trial court abused its discretion in the imposition of sentence in the instant case. At the hearing in aggravation and mitigation, the trial court was informed that the 21-year-old defendant had been previously convicted of three misdemeanors, including one for aggra-

vated assault. The statutory penalty for voluntary manslaughter is imprisonment in the penitentiary for a period of one to twenty years. Under the facts and circumstances of the case at bar, the sentence imposed, including the maximum term of fourteen years, was proper, and we see no basis for disturbing that sentence.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.