THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NANCY LOUISE WILLIAMS, Defendant-Appellant.

(No. 11603;

Fourth District—November 21, 1973.

John F. McNichols, Deputy Defender, of Springfield (J. Daniel Stewart, Assistant Appellate Defender, of counsel), for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (James W. Jerz

and Martin Moltz, both of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The defendant-appellant Nancy Williams was indicted for murder, voluntary manslaughter and involuntary manslaughter in connection with the death of one James Brack whom the defendant shot. The jury returned verdicts of not guilty on the murder and voluntary manslaughter counts and found defendant guilty of involuntary manslaughter. Defendant was sentenced to an indeterminate term of 1-10 years. There is no dispute over the fact that defendant fired the shot which caused the victim's death.

On appeal the defendant states the sole issue is "did the State fail to prove the defendant guilty of involuntary manslaughter beyond a reasonable doubt?" We affirm. Briefly summarized the evidence established that on the evening of February 11, 1971, the defendant and her husband, James Williams, went to a tavern in Springfield, Illinois. During the evening James Williams and the victim, Brack, began fighting. Brack was a large individual weighing between 205 and 250 lbs. and was approximately six feet tall. James Williams was about 5'10" in height and weighed between 135 and 165 lbs. There was conflicting evidence as to whether or not Brack had a gun. The defendant testified that he did and was using it to beat her husband; other witnesses said that Brack was not possessed of a weapon. No witness testified that Brack fired a shot. During the struggle Brack and Williams fell to the floor either in a kneeling position or with Brack on top of Williams. The defendant was about six feet away from her husband and Brack while they were fighting. She pulled a 32 calibre revolver from her brassiere, fired twice into the ceiling, pulled the trigger a third time resulting in a misfire, shot a fourth time, the bullet striking Brack in the back, and his death ensued. The police recovered three spent cartridges and one with burn marks indicating a misfire. Apparently the only injury sustained by James Williams in the scuffle was a scratch or cut on his head. The precise number of persons present in the tavern during the incident is not established, estimates ranging as high as 40. The defendant did not testify, but a statement given by her to the police was introduced into evidence and read to the jury, and she testified that the tavern was "kinda crowded". Her version of the incident was that she went to the tavern with her husband, that she was sitting at the bar when her husband called to her, that when she looked Brack was ready to jump on her husband, that she saw a gun in Brack's left hand, that Brack then jumped on her husband and started fighting and beating him, that no one stopped the fight, and that she then pulled the gun out and fired it

twice, not at Brack but into the ceiling. That her purpose in doing this was "to try to stop them". That she pulled the trigger a third time and nothing happened but the next time "I hit him". That at this time Brack was on top of her husband and had him down on the ground. That Brack was beating her husband with the gun. When asked why she shot James Brack her answer was, "Because I was scared he was going to shoot me too, because I was scared he was going to shoot James and me." Her statement further recited that she was 16 years of age, had quit school three years ago, had been married to Williams when she was 14 years of age and had one child. That her husband had given her the gun sometime before, that she had never fired the weapon before and did not know that it was loaded.

Other witnesses testified that James Williams and Brack were engaged in conversation for 5 to 10 minutes before the struggle commenced, and that this conversation was conducted in moderate tones of voice. The conversation appears to have been concerned with Brack's request that Williams pay a debt which Brack claimed was owed to him. Just before the struggle commenced Williams, according to some witnesses, removed his glasses, laid them on the bar and said to Brack, "Well, we can get it on right here" at which time the struggle commenced. Some witnesses testified that they saw no blows struck, that the two men were scuffling or wrestling. The testimony as to the distance between defendant and Brack, at the time the shots were fired, is in conflict and varied from 4 to 10 feet. The witness Kreiser, a crime lab analyst for the Bureau of Identification of the State of Illinois, testified that he had tested Brack's clothing and found no powder particles on it. Presence of such particles would have indicated that the range from the muzzle of the weapon to the clothing "would have been relatively close".

Counts 1, 2, 3, 4, 9 and 10 of the indictment were submitted to the jury. Count 1 charged that defendant committed the offense of murder "In that she intentionally and knowingly shot and killed James Brack with a pistol * * *."

Count 2 charged that the defendant committed the offense of murder "In that she with intent to do great bodily harm to James Brack shot and killed the said James Brack with a pistol * * *."

Count 3 charged that the defendant committed the offense of murder "In that she, knowing that such acts would cause death, shot and killed James Brack with a pistol * * *."

Count 4 charged that the defendant committed the offense of murder "In that she, knowing that said acts created a strong probability of death to James Brack, shot and killed the said James Brack with a pistol * * *."

Count 9 charged that the defendant committed the offense of voluntary

306

manslaughter "In that she, acting under a sudden and intense passion resulting from serious provocation by James Brack, shot and killed the said James Brack with a pistol  *   *   *."

Count 10 charged that the defendant committed the offense of involuntary manslaughter "In that she, acting in a reckless manner, shot and killed James Brack with a pistol  *   *   *."

While the defendant states the sole issue in terms of the sufficiency of evidence to establish the guilt of the defendant beyond a reasonable doubt on the involuntary count, the thrust of her argument may more accurately be set forth and summarized as follows:

(1) She argues that the defendant would be guilty of murder if she intentionally shot Brack without legal justification.

(2) If she was acting under a sudden and intense passion resulting from serious provocation, she would be guilty of voluntary manslaughter if her acts were without legal justification.

(3) Defendant was acquitted by the jury of both murder and voluntary manslaughter.

(4) The defendant admitted shooting Brack and did so because she was scared that Brack was going to shoot her and her husband.

(5) "The general rule is that an involuntary manslaughter conviction cannot stand where the acts leading to the death are done in self defense, which presupposes the intentional use of force. [Citing cases.]"

(6) Since all the evidence indicates that Nancy Williams either intentionally shot Brack or was acting under a sudden and intense passion when she shot him "the jury must have found that her acts were in defense of her husband or in self defense".

(7) Since there is no evidence to support a finding that the acts were performed recklessly, the judgment of guilty of involuntary manslaughter must be reversed.

The defendant's argument hinges upon two basic propositions. The first is that in returning verdicts of not guilty of murder and voluntary manslaughter "the jury must have found that her acts were done with legal justification". This is a conclusion based on speculation rather than upon unassailable fact.

■■ Ill. Rev. Stat. 1971, ch. 38, sec. 7—1 provides that "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony". Whether the

defendant was justified in the use of force in the instant case was a question of fact for the jury. (*People v. Jordan*, 18 Ill.2d 489, 165 N.E.2d 296; *People v. Owens*, 73 Ill.App.2d 108, 219 N.E.2d 733.) Here, the defendant did not testify, her version of the incident was given to the jury in the form of a statement given to the police. The mere assertion, by defendant, that she shot "Because I was scared that he [Brack] was going to shoot me too, because I was scared he was going to shoot James and me" did not remove the issue from factual determination by the jury. There was conflicting testimony as to whether or not Brack was armed, and if the jury concluded that he was not, defendant's claim of justifiable use of force would have evaporated. It is also clear from the evidence that James Williams was not being beaten to a pulp in the fight. The witness Larry Don Ingram supplied the only testimony as to the extent of the injuries sustained by James Williams. Ingram testified that "He had—uh—a cut like on the right side of his head—" and that the cut was bleeding "-a little bit". There is no evidence of any threats made by Brack to either defendant or her husband. Under the evidence which bars on the issue it is clear that the jury could well have concluded that defendant was not legally justified in using the force which resulted in Brack's death.

Defendant urges, however, that the jury would not have acquitted defendant of murder and voluntary manslaughter unless it *did* find that her acts were done with legal justification.

An analysis of the murder and voluntary manslaughter counts of the indictment do not necessitate the conclusion, as a matter of law or indisputable inference, that the jury must have acquitted only on the ground of justified use of force. Count I charged that defendant intentionally killed Brack, and the jury may well have found no specific intent to kill. Count II charged that defendant shot Brack with intent to do great bodily harm. While, as in Count I, the jury could have inferred intent from the evidence, it may well be that it did not. Count III charged that defendant shot Brack "knowing that such acts would cause death". The jury may well have declined to find this state of mind. Count IV charged that defendant shot Brack "knowing that said acts created a strong probability of death". It should be noted that this charge was framed under the provision of ch. 38, sec. 9—1(2) which provides that a person who kills another without lawful justification commits murder if in performing the acts which cause the death "* * * knows that such acts create a strong probability of death or great bodily harm to that individual * * *." In Count IV the charge was confined to knowledge of a *strong probability of death* and omitted the language "or great bodily harm". The jury, in weighing the evidence need not necessarily

have concluded that defendant knew that the shooting created a strong "probability" as contrasted to "possibility" of death or strong probability of great bodily harm.

Count IX of the indictment charged defendant with voluntary manslaughter which is defined in Ill. Rev. Stat. 1971, ch. 38, sec. 9—2 *et seq.* as follows:

> "Voluntary Manslaughter. (a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
> (1) The individual killed, or
> (2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
>
> Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.
>
> (b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

This count also presented a question of fact for the jury. Defendant's argument that, as to this count, the jury must have acquitted solely on the basis that it found defendant's actions to be legally justified is also predicated upon sheer speculation. Whether, in view of the evidence, the jury believed that defendant was acting under "sudden and intense passion" or that Brack's conduct was of a character as to excite such passion in the mind of a reasonable person we do not know and neither does the defendant. But the jury could have acquitted the defendant of voluntary manslaughter under several factual findings.

██ It is also argued that "the defendant * * * could not be guilty of reckless conduct where her only defense was self defense." We know of no rule of law which supports the latter contention. To say that a person claiming to have acted in self defense may not be convicted of involuntary manslaughter, simply because of that claim, is to argue a proposition unsupported by reason or authority. Defendant also urges that where "the acts leading to the death are done in self defense, which presupposes the intentional use of force" the defendant may not be convicted of involuntary manslaughter. (Citing *People v. Hunter*, 365 Ill. 618, 7 N.E.2d 444; *People v. Jordan*, 4 Ill.2d 155, 122 N.E.2d 209.) However, this argument is predicated upon the proposition that the acts of the defendant were legally justified within the purview of Ill. Rev.

Stat. 1971, ch. 38, sec. 9—3(a). As we have previously indicated the question of legal justification was an issue for the jury, and we cannot say as a matter of law that the jury acquitted the defendant on any of the counts of the indictment on the basis of legal justification.

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.