(No. 35476.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ORABELLE JORDAN, Plaintiff in Error.

*Opinion filed January 22, 1960—Rehearing denied March 28, 1960.*

CHESTER THOMSON, JOHN W. BIGGERS, and RALPH SCHROEDER, all of Bloomington, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and WAYNE C. TOWNLEY, JR., State's Attorney, of Bloomington, (FRED G. LEACH, Assistant Attorney General, and RICHARD J. DALTON and MARVIN H. GESELL, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE HOUSE delivered the opinion of the court:

Defendant prosecutes a writ of error to the circuit court of McLean County to review her conviction of the crime of murder.

About 9:15 p.m. on November 11, 1958, the defendant, accompanied by her husband and Walter Walls, arrived at

the entrance to the Royal Palms Niteclub in Bloomington simultaneously with another group in which Queen E. Thornton was a party. Defendant and Queen had known each other for a number of years and, sometime before this meeting, had been involved in a dispute concerning the pregnancy of Queen's sister, Dorothy. When they met at the entrance to the club they renewed their quarrel but exactly what each said to the other is disputed. The State produced seven witnesses who testified in substance that the defendant told Queen not to speak to her anymore and invited Queen outside to fight. The defendant and two of her witnesses, on the other hand, testified that it was Queen who threatened and invited the defendant outside to fight.

Still quarreling, the two women went outside where they wrestled each other in the middle of the street. Queen apparently gained the advantage by throwing the defendant to the pavement and the latter suffered some head injuries. They fought for several minutes before being separated by one of the many onlookers who had come out of the club. After they were separated, the defendant went to the north side and Queen to the south side of the street where they remained for approximately one or two minutes before resuming their fight. Soon after the fight began the second time, defendant obtained a knife from her pocketbook and stabbed her opponent several times.

Whether the defendant or deceased was the assailant in the final struggle was also disputed. Four of the State's witnesses testified that it was the defendant who crossed over to Queen's side of the street. Another State witness, although he did not testify who made the first move, stated that the stabbing occurred on Queen's side of the street. Of the three occurrence witnesses for the defense, only the defendant testified that Queen was the aggressor.

After the stabbing, the defendant returned to her car on the north side of the street and was driven home by her husband. However, on arrival, she did not go into the

house but instead took a walk in a nearby park where she disposed of the knife. Defendant then returned to her home, and after telephoning her attorney, voluntarily surrendered to the police at the precinct station. In the meantime, Queen died from stab wounds soon after she was taken to the hospital.

Defendant was tried under an indictment charging both murder and manslaughter. The jury returned a verdict finding her guilty of murder in manner and form as charged in the indictment and fixing her punishment at imprisonment in the penitentiary for a term of sixteen years. Post-trial motions in arrest of judgment and for a new trial were overruled and judgment was entered on the verdict.

Defendant does not deny engaging in the fight nor the subsequent stabbing resulting in the death of deceased but contends that she was acting in self-defense and that, as a matter of law, the State did not prove the element of malice aforethought or any intent on her part to kill the decedent.

Defendant's contention is not sustained by the record. In order that a killing be justified on the grounds of self-defense it must appear that the danger was so urgent and pressing that in order to save the defendant's own life or to prevent his receiving great bodily harm the killing of the other was absolutely necessary and it must appear also that the person killed was the assailant or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given. (Ill. Rev. Stat., 1957, chap. 38, par. 367.) Whether a killing is justified under the law of self-defense is always a question of fact to be determined by the jury under proper instructions. (*People* v. *Maurantonio,* 8 Ill. 2d 60, 64.) Once a jury has decided this question and has reached a verdict this court will not disturb that finding unless the evidence is palpably contrary to the verdict or so unreasonable, improbable, or

unsatisfactory that it justifies entertaining a reasonable doubt of the defendant's guilt. *People* v. *Johnson,* 2 Ill. 2d 165, 172; *People* v. *McClain,* 410 Ill. 280.

From a reading of the above summary of the testimony at the trial it is apparent that there was ample evidence from which the jury could properly find that defendant was the aggressor both in the first fight and in the second fight after the two women had been separated. It is true that there was some evidence that the deceased was the aggressor. However, when the evidence is conflicting it is the function of the jury to resolve the conflict and determine the credibility of the various witnesses. (*People* v. *Sudduth,* 14 Ill. 2d 605.) We will not disturb the jury's finding that the defendant did not act in self-defense.

Defendant relies upon *People* v. *McGraw,* 13 Ill. 2d 249, in which we held that the evidence showed that the defendant acted in self-defense. The facts in the present case are entirely different from those in the *McGraw case.* There the defendant accidentally scraped the rear fender and door of a car belonging to a police officer. Defendant proceeded down the street without even noticing that the accident had occurred until he was stopped by the officer, who accused him of deliberately running into his car. The defendant suggested that the matter could be handled without any trouble but the officer became angry and slapped and beat defendant. Defendant begged not to be hit again and asked the officer to arrest him. Several spectators who had gathered to watch the affair also requested that the officer arrest defendant. The officer struck defendant several more times and then took off his belt. holster and gun, placed them in his car and again approached the defendant and attempted to strike him. One of the spectators attempted to stop the officer from beating the defendant and while this spectator was talking to the officer defendant obtained the officer's gun from the car. The officer advanced toward defendant and defendant shot

him. We held in that case that the killing was in self-defense. A mere recital of the evidence is sufficient to demonstate the marked difference between that case and the present case. In the *McGraw case* it was undisputed that the officer was the aggressor throughout the entire affair and the defendant in that case did nothing to even defend himself against the unprovoked assaults and begged that the matter be handled peaceably and that he be placed under arrest. It was only after he had been repeatedly beaten that he shot the officer as he was advancing toward the defendant with the intention of further assaulting him. As we have noted, in the present case, all of the State's evidence showed that the defendant was the aggressor and that the stabbing occurred after the fight had been broken up and at a time when the deceased was not assaulting or attempting to assault the defendant.

It is also apparent that there was sufficient evidence to establish the element of malice beyond a reasonable doubt. While malice is an essential element of the crime of murder it is well established that malice is implied where no considerable provocation appears or when all of the circumstances of the killing showed an abandoned and malignant heart. (Ill. Rev. Stat. 1957, chap. 38, par. 358; *People v. Sally*, 17 Ill. 2d 578.) It is not necessary to justify a conviction of murder that one shall have deliberately formed an intent to kill. It is sufficient if at the instant of the assault he is actuated by that wanton and reckless disregard for human life that denotes malice. (*People v. Johnson*, 2 Ill.2d 165.) It is undisputed that the defendant stabbed the deceased resulting in her death. There is no contention made that the stabbing was accidental. This deliberate act on the part of the defendant, when considered with the substantial evidence that defendant was the aggressor both in the first and second fight, was sufficient to establish the element of malice.

Defendant contends that certain instructions given by

the court were erroneous. We do not find it necessary to quote these instructions in this opinion since in almost every instance the instruction complained of has been approved by us in earlier opinions. One of these instructions on the law of self-defense was specifically approved in *People* v. *McNeal,* 346 Ill. 329, 337. An instruction to the effect that it is not necessary to prove every incriminating fact beyond a reasonable doubt was approved in *People* v. *Dolgin,* 415 Ill. 434, 451. An instruction defining the crime of murder and express and implied malice in the language of the statute was approved in *People* v. *Aldridge,* 14 Ill. 2d 320. Another instruction to the effect that it is not necessary that there be a considerable lapse of time between the formation of a malicious intent to take a human life and the actual execution of that intent was criticized in *People* v. *Jarvis,* 306 Ill. 611, 616. We held in that opinion that the instruction was erroneous as ignoring the defense of self-defense. An examination of the instruction complained of in this case shows that the instruction which was criticized in the *Jarvis case* was modified so as to take into consideration the defense of self-defense. The instruction, as so modified, correctly stated the law and it was proper to give it under the circumstances of the present case. Another instruction complained of instructed the jury that, even if they believed that the deceased made the first attack upon the defendant, the defense of self-defense was not established if the jury further found that the deceased had ceased to attack defendant and that defendant attacked the deceased at a time when the deceased was not making an attack upon the defendant. This instruction correctly stated the law and was properly given.

Our review of the record shows that defendant's guilt of the crime of murder was established beyond a reasonable doubt and that there was no reversible error. The judgment of the circuit court of McLean County is therefore affirmed.           *Judgment affirmed.*