THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EBB SPRIGGS, Defendant-Appellant.

(No. 58413;

First District (2nd Division)—June 11, 1974.

James J. Doherty, Public Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Ebb Spriggs, was indicted for murder,[1] two counts of attempt murder[2] and four counts of aggravated battery.[3] After waiving

---

[1] Ill. Rev. Stat. 1969, ch. 38, par. 9—1(a)(1).

[2] Ill. Rev. Stat. 1969, ch. 38, par. 8—4(a).

[3] Ill. Rev. Stat. 1969, ch. 38, par. 12—4(b)(1).

his right to a jury trial, defendant was found guilty on all counts, and was sentenced to concurrent terms of 15 to 25 years for murder and 5 to 10 years on the other six counts. Defendant now appeals, contending that (1) the evidence showed he was acting in self-defense, or that, at most, the killing was voluntary manslaughter; and (2) the convictions for aggravated battery and attempt murder arose from the same conduct, and therefore, the aggravated battery convictions should be reversed.

On May 27, 1971, at approximately 8 P.M., defendant exited Orbit's Food & Liquor Store located at 3958 W. Arthington Street, Chicago (on the northeast corner of the intersection of Arthington and Pulaski streets). A number of individuals were standing in front of the store. As defendant crossed Pulaski Street, one of the men on the corner called to him. Defendant turned and started toward the group. The witnesses who testified at trial gave conflicting testimony of the events which then followed.

*Betty Lewis Anderson* testified that she was standing with Freddie Sims near the door of the liquor store. She observed defendant arguing with Robert Bell. Defendant walked across the street to a filling station, paused near an automobile, then returned across the street to the group. Defendant told Freddie Sims, "I am going to get you," and shot Sims. The witness stated that defendant had two hand guns and was approximately six steps from Sims when he fired. After Sims was shot, the witness observed defendant then shoot John Lee Grayson who had grabbed defendant in an attempt to disarm him. Gregory Williams then moved toward defendant and was also shot by him. Defendant looked at the victims lying on the ground and walked away. The witness further stated that the shootings occurred near the door of the liquor store, and that at no time did the victims enter the street.

*John Lee Grayson* testified that he observed defendant shoot Sims who was unarmed. Defendant was 4 to 5 feet from Sims. Grayson "rushed" defendant, and pushed him into the street in an attempt to disarm him. They wrestled, one pistol fell to the ground, and defendant then shot Grayson in the chest with his other gun. Defendant and Grayson were wrestling 3 to 4 feet from the curb.

*Gregory Williams* testified that he was standing near the doorway of the liquor store with Sims and Grayson. He heard someone call to defendant, and he observed defendant cross the street and return to the group. He, too, observed defendant shoot Sims as Sims was standing on the sidewalk near the curb. After the shooting began, he moved toward defendant and was shot in the stomach. The witness stated that prior to the shooting, no one had touched defendant, and there had been no "scuffle" with defendant.

*Patrolman David King*, the arresting officer, testified that he and his partner responded to a call regarding a shooting, and upon arriving at the scene, he observed three men lying on the ground. An individual on the scene gave the officers a description of defendant, and they commenced a search for him. They observed defendant enter a building approximately one block from the scene, apprehended him in the hallway and recovered two revolvers from his person. After being advised of his constitutional rights, defendant told the officers that the three men had "jumped" him, and that they were unarmed. Defendant stated that the men had thought he was a member of the "Vice Lords" street gang. Defendant told the officers "that is the only way to deal with them." (This last statement was not part of the officer's official report; apparently it appeared in the officer's personal notes.) The only injury to defendant which the officer observed was a wrist injury.

*Officer Lee Anderson*, a homicide investigator, testified for the defense that on the night of the shooting he interviewed Betty Lewis at the hospital. At that time she told him that she had seen defendant and Grayson struggle, whereupon defendant shot Grayson. She stated that defendant then pulled a second gun and shot Sims and Williams. On cross-examination the officer testified that at the time of this interview, the girl was "highly emotional," upset and crying.

*Wilbert Page*, the owner of a Clark gas station on the northwest corner of Arthington and Pulaski, also testified for the defense. He stated that he observed defendant being attacked by three men as he crossed to the west side of Pulaski. He stated that Grayson had grasped defendant from the rear, and Williams and Sims were on either side of him. They "tussled" in the street for approximately 30 seconds, he heard a shot and saw Williams cross the street toward the liquor store and disappear from his view. He heard another shot and observed Sims run across the street and fall in the doorway of the liquor store. Grayson and defendant continued tussling in the street, he heard two more shots and saw Grayson run across the street. The witness stated that the tussle occurred in the middle of the intersection of Pulaski and Arthington. He also stated that he had not told anyone what he had seen until defendant's father spoke with him at the gas station prior to trial. On examination by the court, the witness stated that because of the jog Arthington takes to the north at Pulaski, he could not see the east door of the liquor store.

*Defendant testified in his own behalf* that as he left the liquor store and was crossing to the west side of Pulaski, Robert Bell, one of the men on the corner called to him. As he returned to the group standing near the curb in front of the liquor store, Bell asked him if he was a "Maniac

Cobra," defendant answered that he was not, but Sims interjected that he was and "jumped" him. Grayson grabbed defendant in a "bearhug," pinning defendant's arms to his body, Sims was on defendant's right side holding his right wrist, and Williams was on defendant's left side. Sims swung at defendant, "creasing" his forehead. Defendant struggled to free his arms and managed to draw the guns from his pants pockets. He shot Williams first with the gun in his right hand, then the gun discharged and injured defendant's wrist. He pulled the trigger of the gun in his left hand and shot Sims. At this point Grayson had him around the neck and was choking him, and defendant shot Grayson. Grayson stepped back and then moved toward defendant, and defendant shot him again. Defendant stated on cross-examination that during the course of the "tussling" he had moved approximately to the middle of the north lane of Pulaski. Defendant denied his statement to the arresting officers that "that was the only way to deal with them." Defendant admitted that prior to the shooting he had never had a conversation with the victims and had never had a fight with them or been threatened by them.

Over the prosecution's objection, the trial court allowed into evidence a transcript of the preliminary hearing testimony of one Charles Coney, who could not be found at the time of trial. Coney had testified that at the time of the shooting he saw four persons tussling in the street. He then saw defendant pull a gun and shoot. Two of the men fell, and the other man ran and then fell. He stated that he did not see how the tussling began.

Defendant does not deny shooting the deceased, Freddie Sims, or the other men. Initially, defendant contends that the State failed to sustain its burden of proving beyond a reasonable doubt that he was not acting in self-defense when he shot Sims, Grayson, and Williams. Defendant's theory of self-defense is based upon his own testimony, the testimony of Page and the transcript of Coney's testimony at the preliminary hearing that the three men attacked defendant prior to the shootings. We note that the testimony of defendant was somewhat inconsistent with that of Page as to where the struggle commenced, and that Page's testimony was somewhat inconsistent with that of Coney as to whether the victims fell when hit or ran from the street to the sidewalk in front of the liquor store.

■■ There is no doubt that the evidence presented by the prosecution and the defense was conflicting, and at times confusing. However, the issue of self-defense is a question of fact. (*People v. Jordan*, 18 Ill. 2d 489, 165 N.E.2d 296.) It is the function of the trial court, sitting as the trier of fact, to resolve conflicts in the evidence and to determine the

credibility of the witnesses. (*People v. Hurst,* 42 Ill.2d 217, 247 N.E.2d 614 modified on appeal 408 U.S. 935; *People v. Pelegri,* 39 Ill.2d 568, 237 N.E.2d 453.) We will not disturb the court's findings unless the evidence is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Jordan, supra.*

Defendant does not dispute that the victims were unarmed and had never threatened or injured him prior to this occurrence, and that he, armed with two revolvers, crossed the street to confront them. The testimony of the prosecution's witnesses, if believed, provided ample evidence from which the trial court could properly find that defendant did not act in self-defense. The court found "that the testimony of Betty Lewis was credible; * * * that the testimony of Wilbert H. Page, Jr. under the circumstances was not sufficient in view of what he testified that he saw and his location and description of the area was not sufficient that was persuasive insofar as the issue before this court [*sic*] * * *." Although the record indicates that Betty Lewis' testimony was inconsistent with her statement at the hospital and was somewhat inconsistent with Grayson's testimony, we are not justified in disturbing the court's determination of the credibility of the witnesses. We will not disturb the court's finding that the evidence proved defendant guilty beyond a reasonable doubt of the offense of murder.

■■ Defendant next contends that even if this court finds that he did not act in self-defense, we should reduce his murder conviction to voluntary manslaughter because he acted upon a belief that the use of deadly force was justified.[4] Again, defendant bases his theory on the evidence indicating that he was attacked by the three victims. As with the issue of self-defense, the trier of fact apparently disbelieved this testimony. The evidence is undisputed that defendant was armed with two weapons as he approached the unarmed victims. The evidence presented by the prosecution, if believed, does not support defendant's assertion that he acted under a reasonable apprehension justifying the use of deadly force, or even that he acted under a reasonable belief that a battery was being or going to be committed upon him. Therefore, the record does not justify substitution of our judgment for that of the trier of fact, and no basis exists upon which to reduce defendant's murder conviction to voluntary manslaughter.

■■ Finally defendant contends that his aggravated battery convictions arose from the same conduct as his attempt murder convictions and therefore, his aggravated battery convictions should be reversed. The indictment charged seven counts—one count charging the murder of

---

[4] Ill. Rev. Stat. 1969, ch. 38, par. 9—2(b).

Freddie Sims, one count for attempt murder and two counts for aggravated battery as to John Lee Grayson and one count for attempt murder and two counts for aggravated battery as to Gregory Williams. It is not disputed that the counts of attempt murder and aggravated battery of Grayson arose from a single act of defendant, and that likewise, the counts of attempt murder and aggravated battery of Williams arose from a single act of defendant. Our supreme court recently has held that "under such circumstances there can be but one conviction of crime." (*People v. Lilly*, 56 Ill.2d 493, 495, 309 N.E.2d 1.) Therefore, we reverse the judgments of conviction for the four counts of aggravated battery.

Accordingly, the judgment of conviction for murder is affirmed. The judgments of conviction for attempt murder are affirmed. The judgments of conviction for aggravated battery are reversed.

Affirmed in part; reversed in part.

HAYES, P. J., and LEIGHTON, J., concur.