THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRED W. SHAPPERT, Defendant-Appellant.

(No. 74-345; 

Second District (1st Division)—December 12, 1975.

*Rehearing denied January 28, 1976.*

684

Peter DeBruyne, of Miller & Hickey, of Rockford, and Vedder, Price, Kaufman & Kammholz, of Chicago, for appellant.

John H. Maville, State's Attorney, of Belvidere (James W. Jerz and Christine Drucker, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

Following a bench trial, the defendant, Fred W. Shappert, was found guilty of aggravated assault, sentenced to 30 days in the Boone County Jail, and fined $500. On appeal, the defendant contends that certain testimony tending to show the complaining witness' bias and prejudice was improperly excluded by the trial court, and that the defendant was not proven guilty beyond a reasonable doubt. We hold that the trial court did not err in its evidentiary ruling and that the defendant was proven guilty beyond a reasonable doubt. We therefore affirm the judgment.

The defendant was charged with the offense of aggravated assault, "in that he did, in committing an assault, use a deadly weapon, in that he did, without lawful authority knowingly point a gun at Richard E. Roettger, thereby placing Richard E. Roettger in reasonable apprehension of receiving a battery, * * *."

At the trial, the victim, Richard Roettger, testified that on October 19, 1973, he was operating his combine in a field when he observed the defendant's vehicle approaching. According to his testimony, after descending from the combine, he turned around and was confronted

by the defendant, who pointed a pistol at his face and threatened to kill him. The victim stated that he retreated until blocked by the combine, and that at this point, he grabbed the defendant and wrestled him to the ground. After Keith Grennan, the defendant's farm manager, arrived at the scene and disarmed the defendant, Roettger released the defendant. We note that during the struggle the victim's head was wounded and subsequently, he was hospitalized for the injuries.

On cross-examination of the victim, it was established that the defendant had commenced a civil action against Roettger, seeking an injunction to restrain him from selling animals and grain without the defendant's consent. The court had granted the injunction, and thereafter had cited Roettger for contempt for violating the injunction. Further, on cross-examination, it was established that Roettger was contemplating a civil action against the defendant for damages based on the October 19, 1973 incident. When asked if he had met with Patrick Mattison on October 24, 1973, Roettger, after initially denying the meeting, admitted that he had, in fact, gone to Mattison's office, and that Mr. Mattison had listened to a telephone conversation between himself and another person. However, Roettger asserted that he did not know the identity of the person to whom he spoke, and that he did not know if he spoke to the defendant's attorney. In response to further cross-examination, Roettger asserted that he did not recall stating during that phone conversation, that he needed $100,000 and that he would settle all matters between himself and Mr. Shappert for $100,000.

Michael Udulutch, who was a farm worker for the defendant, testified that on October 19, 1973, the defendant drove his car to the area where the witness was working. While discussing a farming matter with the defendant, Michael Udulutch observed a pistol on the front seat of the defendant's vehicle. According to Udulutch's testimony, the defendant displayed the weapon and stated, "You see this, * * * I'm going to shoot that son of a bitch." The witness testified that the defendant then drove away "in a heck of a hurry."

The next witness, Keith Grennan, who was the defendant's farm manager, testified that he delivered grain receipts to Mr. Shappert on the morning of October 19, 1973, and then proceeded to an incline in the field for the purpose of observing Roettger, who was operating a combine. Grennan's position was approximately one-quarter mile from the combine operation. The witness testified that from this vantage point, he observed the defendant's car approaching the combine operation at a fast rate of speed, and he observed Roettger start his descent from the combine. Grennan testified that his view of both Roettger and Shappert was obstructed then by the combine, but he could hear Shap-

pert's voice. He then proceeded to the location of the incident, where he saw that a scuffle between the two men had begun. According to the witness' testimony, during the struggle, Roettger held the defendant's arm to the ground and thereby immobilized the defendant's hand which held a pistol. Mr. Grennan testified that Roettger stated, "He's got a gun; get it from him." After disarming the defendant, Mr. Grennan observed that Roettger attempted to use the radio-telephone in defendant's car, and that the defendant got into his car and drove in reverse, causing an open door to push Roettger backwards for approximately 10 feet. The defendant left the scene and drove in a westerly direction.

Mr. Grennan further testified that en route to the nearest neighbor's home, he drove east and then north. However, before reaching his destination, the defendant cut him off the road, demanded the return of his pistol, struggled with him, and regained possession of his pistol.

Fred Shappert, the defendant, testified that on July 30, 1973, he had observed Roettger loading oats in violation of the injunction and had reminded him of the injunction. According to the defendant's testimony, on that occasion, Roettger struck him and said, "You old son of a bitch, I can do anything I want to do and I'll do it."

The defendant stated that on the morning of October 19, 1973, Keith Grennan delivered grain receipts, which indicated that Roettger had sold grain in violation of the injunction. The defendant testified that in view of the altercation with Roettger on July 30, he placed his gun on the front seat of his car and proceeded to search for Roettger. According to the defendant's testimony, he asked Michael Udulutch if he knew Roettger's location, but he testified that he did not state to Udulutch that he was going to kill Roettger. He then drove to the combine operation, left the pistol in his car, and approached Roettger. The defendant testified that Roettger "bounced off" the combine, charged at him, and knocked him down. Then, according to the defendant's testimony, while Roettger retreated, Shappert proceeded to get his gun from his car. Shappert testified that as he walked toward Roettger, he pointed the gun at the ground and had no intention of using the weapon. According to the defendant's testimony, he was the person who asked Keith Grennan to disarm him during his struggle with Roettger.

Next, the defendant called Patrick Mattison to testify to a conversation that occurred on October 24, 1973, to show the bias of the complaining witness. The State objected to this testimony, and the court ruled that the bias of the complaining witness had previously been established. Defense counsel's offer of proof was that Mr. Mattison would testify that on October 24, 1973, Roettger appeared at Mattison's

office, and told Mattison that he would drop charges in the criminal action and any contemplated civil action against Mr. Shappert if Mr. Shappert paid him $100,000. Further, defense counsel stated that Mr. Mattison would testify that Roettger made this settlement offer to Shappert's attorney in a telephone conversation. The court denied counsel's offer of proof, and the defense rested its case.

The court found the defendant guilty of aggravated assault, sentenced him to 30 days in jail, and imposed a fine of $500.

On appeal, the defense contends that the trial court erred in excluding certain testimony which tended to impeach and demonstrate the complaining witness' bias and interest. The defendant argues that the trial court unduly restricted the cross-examination of Roettger, the complaining witness, and erroneously excluded the testimony of Patrick Mattison as presented in defense counsel's offer of proof. The defendant argues that the credibility of the complaining witness and the credibility of the defendant were crucial issues in this case, and that therefore, the exclusion of evidence which tended to impeach the complaining witness constitutes reversible error. Having reviewed the entire record, we conclude that the trial court did not err.

The defendant's contention that the trial court unduly restricted cross-examination of the complaining witness is unsubstantiated by the record. During cross-examination, defense counsel did, indeed, establish that Roettger contemplated a civil action against the defendant based on the incident of October 19, 1973, that Roettger had been enjoined from selling various farm products, and that he had been held in contempt for violating the injunction. Further, on cross-examination, defense counsel questioned Roettger regarding his visit to Mattison's office, which was initially denied and later admitted by the complaining witness. In response to defense counsel's inquiry, Roettger stated that he had a telephone conversation while in Mattison's office, but he did not know with certainty the person to whom he spoke and did not recall offering to drop all matters against Shappert for $100,000. In view of this testimony which tended to impeach and demonstrate Roettger's interest and bias, we cannot conclude that cross-examination of the complaining witness was unduly restricted by the trial court.

██ We further conclude that the exclusion of Patrick Mattison's testimony did not constitute reversible error. In view of Roettger's testimony on cross-examination which tended to impeach and demonstrate his interest and bias, this evidence, which was offered to impeach and show the complaining witness' interest and bias, was cumulative on the issue of credibility, and as such, it was properly excluded by the court.

We note further that since Roettger did not deny any of the matters to which Mattison would have testified, Mattison's testimony was not necessary to complete defense counsel's impeachment of Roettger.

Next, the defendant contends that he was not proven guilty beyond a reasonable doubt. In support of this contention, the defendant argues that evidence was presented that the defendant reasonably believed that the use of force likely to cause death or great bodily harm was justified, and that the State failed to negate this affirmative defense of self-defense. The defendant further asserts that the only evidence rebutting Fred Shappert's claim of self-defense is Roettger's testimony, which was so impeached as to render it "unworthy of belief" by the trial court.

A review of the defendant's testimony establishes that there had been prior altercation with Roettger, and in view of this prior altercation, the defendant took his pistol with him on October 19, 1973, when he decided to confront Roettger with the grain receipts which indicated that Roettger had violated the injunction, described above. Further, after describing Roettger as "bouncing off" the combine and "charging" at him, the defendant testified that Roettger "backed off", and that he then obtained the gun from his car and walked toward Roettger. Then, according to the defendant's own testimony, "when he [Roettger] saw that I had the gun in my left hand pointing to the ground, I think he made up his mind he was going to take it away from me."

■■ It is well established that the right to defend oneself does not permit the pursuit and injuring of an aggressor after the aggressor has abandoned the quarrel. (*People v. Fort* (1970), 119 Ill.App.2d 350, 355, 256 N.E.2d 63.) According to the defendant's testimony, when the defendant obtained his weapon, Roettger had retreated and any danger to the defendant had passed. At that point, as the incident was related by the defendant, *he* became the aggressor, and indeed, it was Roettger who acted in self-defense in attempting to disarm Shappert. In view of this testimony of the defendant, we cannot agree with the defendant's premise that the evidence raised the issue of self-defense, in that he reasonably believed the use of force likly to cause death or great bodily harm was justified.

Moreover, even if we assume that the evidence raised the affirmative defense of self-defense, we cannot agree with the defendant's contention that the State failed to negate the affirmative defense and that consequently, he was not proven guilty beyond a reasonable doubt.

The issue of self-defense is a question of fact (*People v. Jordan* (1960), 18 Ill.2d 489, 492, 165 N.E.2d 296; *People v. Spriggs* (1974), 20 Ill.App.3d 804, 807, 314 N.E.2d 573), and it is the function of the

trial court, sitting as the trier of fact, to resolve conflicts in the evidence and to determine the credibility of the witnesses. (*People v. Jordan* (1960), 18 Ill.2d 489, 493, 165 N.E.2d 296; *People v. Spriggs* (1974), 20 Ill.App.3d 804, 807, 808, 314 N.E.2d 573.) We may not substitute our judgment for that of the trier of fact on questions involving the credibility of the witnesses. *People v. Stringer* (1972), 52 Ill.2d 564, 568, 289 N.E.2d 631; *People v. Nicholls* (1970), 44 Ill.2d 533, 540, 256 N.E.2d 818.

■■ Roettger and Shappert were the only witnesses to the incident who could establish who was the aggressor. Although Roettger's possible interest or bias in the prosecution was established on cross-examination, his testimony was not thereby rendered wholly incredible. Further, the testimony of Keith Grennan corroborated Roettgers' version of the incident and contradicted Shappert's version of the incident. We cannot conclude that the defendant's testimony was entirely credible and that the complaining witness' testimony was entirely incredible. Rather, we conclude that in the case at bar, the evidence was not so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Jordan* (1960), 18 Ill.2d 489, 492, 493, 165 N.E.2d 296; *People v. Spriggs* (1974), 20 Ill.App.3d 804, 808, 314 N.E.2d 573.

We therefore affirm the judgment.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.