THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAUL ROSAS, Defendant-Appellant.

Third District   No. 76-522

Opinion filed September 22, 1977.—Rehearing denied October 18, 1977.

Jerry Serritella, of Peoria, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial the defendant, Raul Rosas, was found guilty of two charges of murder and one charge of arson. On the murder convictions the circuit court of Peoria County sentenced the defendant to concurrent terms of imprisonment of from 18 to 40 years on each charge and also

sentenced the defendant to a concurrent term of imprisonment of 6 2/3 years to 20 years on the arson conviction. No assignments of error have been made with respect to defendant's conviction and sentence for the offense of arson.

With respect to the murder convictions, the defendant urges three assignments of error on this appeal. First, defendant contends the evidence is insufficient to support the jury's conclusion he was guilty of the charges beyond a reasonable doubt. Second, the defendant urges the trial court should have given an instruction on the offense of voluntary manslaughter. Finally, the defendant insists the court should have refused to give the issues instruction tendered by the People and instead should have given the issues instruction which he tendered.

For the purpose of understanding the issues which we shall consider on this appeal, the details of the incident as disclosed by the testimony of the defendant and his prior statement will be summarized.

On May 11, 1976, after work, the defendant went to two taverns in Princeville. Pursuant to a telephone conversation with Jose Becerra, one of the deceased, the defendant was invited to Becerra's house. Before proceeding to Becerra's house, defendant stopped at his mother's and picked up a six-shot handgun. At Becerra's house when the defendant arrived were Becerra, Juan Martinez and Harvey Perez. The defendant brought alcohol with him and Becerra, Perez, Martinez and himself proceeded to consume it. Manual Chavez arrived during the drinking. Chavez started ridiculing and teasing the defendant and the defendant, at least twice, asked Chavez to stop it. After Chavez made another derogatory remark to the defendant, the defendant approached Chavez and grabbed him. Chavez and the defendant then engaged in a scuffle in which Becerra joined. The defendant ran away from Becerra and Chavez. During the scuffle, the defendant's gun came loose from his pants and he grabbed it to keep it from falling to the floor. Becerra and Chavez ran at the defendant and the defendant pulled the gun from his belt. The defendant pointed the gun at Becerra and Chavez and said words to the effect of "stop" and "cool it." Becerra and Chavez came at the defendant and the defendant ran back a second time. The defendant was pursued by Becerra and Chavez. The defendant ran into the living room toward the front door. The defendant then shot Becerra three times and Chavez twice. Both men died shortly thereafter. The defendant then set the house on fire to cover up the evidence and took the bodies and buried them near a roadside. Juan Martinez and Harvey Perez assisted the defendant in burying the bodies. No charges were placed against Harvey Perez and Juan Martinez and they testified as State's witnesses. The defendant gave the police a full statement the next day claiming self-defense and showed the police where he had put the gun.

Defendant was charged with the murders of Becerra and Chavez and with the arson of Becerra's house. The jury found defendant guilty of all three charges.

■■  Defendant first contends he was not guilty of the murders beyond a reasonable doubt. There can be no question but that the People have the burden of proving beyond a reasonable doubt all of the elements of the offense charged, including the element that the conduct was without legal justification where some evidence of self-defense is shown. (*People v. Johnson*, 108 Ill. App. 2d 150, 247 N.E.2d 10.) Where an act may be attributed to a criminal or to an innocent cause, the act will be attributed to the innocent cause rather than to the criminal one. (*People v. Wilson*, 400 Ill. 461, 81 N.E.2d 211.) Whether the use of force resulting in death was justified or the evidence indicates self-defense is a question of fact for the trier of fact and will not be disturbed on appeal unless the evidence is so unsatisfactory as to support a reasonable doubt. *People v. Acevedo*, 40 Ill. App. 3d 105, 351 N.E.2d 359, and *People v. Spriggs*, 20 Ill. App. 3d 804, 314 N.E.2d 573.

The defendant admitted killing Becerra and Chavez. The only issue to be resolved by the jury was the nature of the intent which accompanied the conduct. In insisting that he acted only in self-defense and that the use of deadly force was justified, defendant points to the consistency between his testimony and that of the other two witnesses to the incident as well as the consistency of the in-court testimony with the out-of-court statements of the defendant and the witnesses. From a review of the record as summarized by the foregoing statement of facts, it appears there is substantial agreement between the defendant and the witnesses concerning the incidents as they unfolded. However, the conclusions which may be drawn from the evidence are conflicting and are sufficient to show the defendant's conduct in resorting to the use of deadly force was not legally justified. We need refer only to some of the circumstances which support the jury's verdict.

■■  Initially we have the bad relationship which existed between the defendant and Becerra. Before visiting Becerra's house the defendant armed himself and thereafter submitted to teasing ridicule in an atmosphere which provoked physical retaliation by defendant. Admittedly a scuffle ensued, but the extent to which defendant made efforts to retreat or withdraw or the nature, extent and character of the efforts of the victims to harm the defendant are such that the jury could disbelieve the defendant's claim that deadly force was required. We believe the evidence was sufficient to support the jury's determination.

This brings us to the defendant's argument that the facts show that the jury should have been instructed on the offense of voluntary manslaughter. This argument is premised on the defendant's alternative

view of the evidence, namely, that while believing himself to be acting in self-defense the belief was unreasonable under the circumstances.

As noted earlier, the indictment charged the defendant with the murders of Becerra and Chavez. The defendant was not charged in the indictment with voluntary manslaughter. At the close of the evidence, during the conference on instructions the People indicated they had no desire or intention of submitting instructions on the offense of voluntary manslaughter. During the trial both the People and the defendant took the position that the defendant was either guilty of murder or he was innocent by reason of acting in self-defense. Defendant's counsel likewise took the position that no instructions should be given regarding voluntary manslaughter. The consequences of such a decision were discussed by the trial judge with both the defendant and his counsel. There can be little doubt from the record and arguments of the parties in this court that the defendant was well aware that voluntary manslaughter instructions could and would be given by the court if he so desired. Further, it was the defendant's deliberate and considered decision to insist that he was acting in self-defense and that his belief in this regard was reasonable. The defendant adamantly held to his position and the judge agreed to only instruct the jury with regard to murder, acknowledging the competence of the legal advice the defendant received in arriving at his position.

■■ The defendant relies on the general rule that a jury ought to be instructed on the law applicable to the facts. (See *People v. Davis*, 74 Ill. App. 2d 450, 221 N.E.2d 63.) However, we do not believe this rule can be extended to those cases where the issues have been deliberately delineated by the parties with full awareness of the alternatives and the instructions as given are supported by evidence. The position of the defendant was rejected in *People v. Allen*, 35 Ill. App. 3d 342, 347, 341 N.E.2d 431, 435, wherein the court observed "Obviously, the defendant did not want the jury to consider a 'compromise' verdict. Accordingly, the judge did not abuse his discretion by failing to tender, *sua sponte*, an instruction on voluntary manslaughter." To the same effect is *People v. Taylor*, 27 Ill. App. 3d 849, 327 N.E.2d 504. We find no error in the court's action in failing to give *sua sponte* over the objections of the defendant any instructions on voluntary manslaughter.

■■ Finally, the defendant argues the court erred in giving the issues instruction tendered by the People and refusing the one he tendered.

The instruction tendered by the People and given by the court was IPI Criminal Nos. 7.02 and 25.05. (Illinois Pattern Jury Instructions, Criminal, Nos. 7.02, 25.05 (1968).) The instruction tendered by the defendant and refused by the court was the same as the one given at the request of the People, except that it contained an additional or fourth element which the People were required to prove. This additional element was included in

the sample set of jury instructions on page 460 of IPI Criminal. It described element four which required the People to prove "that the defendant did not believe that circumstances existed which justified the use of the force which he used."

From the briefs it appears the issues instruction as illustrated by the sample instructions on page 460 was customarily given in Peoria County, but at the trial of this case the sample instruction was not given. The People instead tendered the numbered instructions as they were particularly designated and described on pages 68 and 441. IPI Criminal Nos. 7.02, 25.05.

The differences between the particular instructions which are specifically set forth and discussed by the drafters of the rules and those included in the sample set of instructions have been noted in earlier cases such as *People v. Burnett*, 35 Ill. App. 3d 109, 341 N.E.2d 86, and *People v. Diaz*, 38 Ill. App. 3d 447, 348 N.E.2d 199. Why the instructions differ is not explained by the drafters of the instructions and accordingly, no reason existed for departing from the instructions as stated in Nos. 7.02 and 25.05. (See *People v. Diaz*, 38 Ill. App. 3d 447, 457 n. 2, 348 N.E.2d 199, 207 n. 2.) In *People v. Burnett*, 35 Ill. App. 3d 109, 341 N.E.2d 86, the court held that giving an issues instruction which included the fourth element suggested in the sample set was erroneous, but not prejudicial. We agree. The instruction tendered by the defendant should not have been given and the court was correct in declining to give it.

For the foregoing reasons the judgments of the circuit court of Peoria County are affirmed.

Judgments affirmed.

STENGEL, P. J., and BARRY, J., concur.