THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY BASHAM, Defendant-Appellant.

Fourth District   No. 4—91—0892

Opinion filed May 28, 1992.

L. Stanton Dotson, of Mattoon, for appellant.

Nancy Owen, State's Attorney, of Charleston (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Defendant Larry Basham appeals his conviction for aggravated battery under section 12—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(a)), following a jury trial in the circuit court of Coles County. Defendant was acquitted of the offense of aggravated battery by use of a deadly weapon (Ill. Rev. Stat. 1989, ch.

38, par. 12—4(b)(1)). He was also acquitted of the offense of battery against Lilly Lewis. Defendant argues (1) he is not guilty under the doctrine of self-defense; (2) the verdict is against the manifest weight of the evidence; (3) the jury was prejudiced because a prosecution witness had independently contracted with the employer of a juror; (4) jury instructions were improper and prejudicial; and (5) the court erred in denying a motion for mistrial, where the jury heard evidence concerning defendant's prior criminal conduct.

### FACTS

Tim Smith and defendant live on lots adjoining a bank parking lot where children often play baseball. On May 25, 1991, Tim Smith approached a number of children in the lot and asked if they would hit the ball in a different direction or play down the street at the baseball diamond. He was apparently concerned because balls would often hit his house and otherwise land on his property. He was afraid a ball might hit his five-year-old son or his father, Lonnie Smith, who was mowing the lawn.

According to Tim and his father, defendant came rushing out to the lot and began yelling wildly at Tim, apparently telling him that the children could play in any direction they wished. Defendant then allegedly encouraged the children to continue hitting the ball in the same direction, toward the Smith house. The first pitch resulted in a ball landing in the Smith yard and Tim yelled something to the effect that the ball was now his. Defendant's father walked over to Tim and asked for the ball back, but Tim refused. About this time, defendant ran back to his garage and returned with a basket of balls and a few more bats and, according to the Smiths, encouraged the children to keep hitting the balls. At this point, Lonnie Smith climbed off his riding mower and walked out to the playing field to talk with defendant. Lonnie claims he said to defendant, "Me and you have to talk." Defendant claims he said, "Punk, me and you are going to tangle." Lonnie was followed by his wife, Lilly, who began yelling at defendant and pointing her finger toward his face. Defendant had, in the meantime, picked up a bat and, when Lilly came close to him, he allegedly grabbed her by the neck and pushed her. Defendant claims he just slapped her hands away from his face. John Poorman, an independent witness, testified that he saw Lilly step backward as though she was trying to regain her balance after being pushed.

Lonnie testified he was only trying to reason with defendant, asking him why he would teach his children to hit balls toward his son's house. Defendant claims Lonnie was encouraging him to drop the bat and fight it out. Poorman testified that defendant jabbed the bat toward Lonnie a

few times and then began to walk back toward his house, turning a few times to face Lonnie. Lonnie was apparently quite heated at this point, yelling at defendant for hitting his wife and following defendant as he walked toward his home.

The moment they both reached defendant's property, defendant turned around, told Lonnie to get off his property, and then swung the baseball bat hard, toward his knees. A number of witnesses, including defendant's mother, testified that defendant hit Lonnie immediately after telling him to get off his property. Lonnie blocked the bat with his forearm; they struggled and eventually fell into defendant's garage. Lilly and Tim ran in behind and, after a heated exchange of words, broke up the fight. It was later discovered that Lonnie's forearm had been broken when he blocked the baseball bat.

Defendant claims that Lonnie came after him with his hands doubled up and was just about to hit him. He claims he swung the bat at Lonnie's knees in self-defense. Lonnie claims he never intended to hit anyone; he approached defendant with his hands unclenched and claims that defendant's actions were unprovoked. Defendant called the police and spoke with Officer Hale, who came to defendant's house to investigate. After speaking again with defendant and taking statements from witnesses, Officer Hale returned to defendant's house and arrested him for aggravated battery.

■■ Defendant argues that he is not guilty under the doctrine of self-defense. Whether one has acted in self-defense is a question for the jury. (*People v. Jordan* (1960), 18 Ill. 2d 489, 165 N.E.2d 296.) Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. (Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Including testimony of the victim and defendant, the jury heard 14 different versions of the event in question, each differing slightly in detail. Of the 14 occurrence witnesses, only 2 are adults and unrelated to either party.

The primary issue for the jury was whether Lonnie appeared ready to strike defendant just before defendant hit him with the bat. John Poorman, a disinterested witness and neighbor, testified that Lonnie never tried to strike defendant and never clenched his fists. In his opinion, Lonnie was not threatening defendant at all. Another disinterested witness, Steve Shadwick, lives between defendant's house and defendant's parents' house. He testified that Lonnie had his fists clenched and

walked toward defendant in a fast-paced, angry manner. The State impeached this version with testimony of Officer Hale, who claims Shadwick told him on the date of the occurrence that Lonnie approached defendant in a calm manner, with open hands down at his sides.

It is not the function of this court to retry defendant. Our supreme court reiterated the applicable standard in *People v. Eyler* (1989), 133 Ill. 2d 173, 549 N.E.2d 268, *cert. denied* (1990), 498 U.S. 881, 112 L. Ed. 2d 174, 111 S. Ct. 215, where it held that after reviewing the evidence in the light most favorable to the prosecution, a conviction will be upheld as long as " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) (*Eyler*, 133 Ill. 2d at 191, 549 N.E.2d at 276, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) In this case, the jury was capable of weighing the credibility of witnesses and amply justified in finding sufficient evidence to convict. We find it neither unreasonable nor improbable that the jury would disbelieve defendant's claim of self-defense.

Defendant next argues that the jury was impaneled improperly and was prejudiced against defendant. During *voir dire*, it was disclosed that a member of the jury, Maria Miller, worked with the Department of Children and Family Services (DCFS). As a result, she occasionally worked with prosecuting attorney Novak. Although her contact with Novak was generally infrequent, she had just finished working a case with him only two weeks before. She stated she did not know any of the witnesses and had minimal contact with the police officers scheduled to testify. Miller was questioned by the court, defense counsel, and prosecutor before defense counsel accepted the panel. The court then turned to the selection of alternate jurors. After the first alternate was interviewed, defense counsel asked to have Miller removed from the panel and replaced by the alternate. The request was denied. Defense counsel then argued to have her eliminated for cause, claiming that her relationship to the prosecutor was too close for a juror. This request was also denied. During trial, Debbie Lynn Smith, the victim's daughter-in-law, testified on cross-examination that she was employed as a counselor and independently contracted with DCFS. She was never asked if she knew Miller and gave no indication that she did.

At the end of trial, as the jurors were being led from the courtroom, defense counsel requested a side bar and repeated his objection to Miller. He claimed he saw her smile at the prosecutor as she was leaving, and also pointed out that she was employed at DCFS, where a witness does some business. The request to substitute her for an alternate

juror was denied. In defendant's post-trial motion and appeal, the issue of Miller's relationship with Novak was discarded. Defendant argues that since Miller's employer has done business with a witness, there is a presumption of unfair prejudice that calls for a mistrial.

Defendant's objection is neither timely nor persuasive. Counsel should have known through discovery that Debbie was employed at DCFS and ought to have made his objection during *voir dire*. Furthermore, when the witness' occupation was elicited during defense counsel's cross-examination, he had the opportunity to ask the essential question—whether she knew any of the jurors on the panel. He did not. Miller claims she did not know any of the people on the witness list, and we find virtually no evidence in the record to rebut this assertion. The mere fact that a witness has independently contracted with an agency that employs one of the jurors is not, by itself, indicative of prejudice and is not grounds for a mistrial.

Defendant next argues his case was unfairly prejudiced when the court refused to give the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 24—25.09 (2d ed. 1981) (hereinafter IPI Criminal 2d), which read:

> "A person who initially provokes the use of force against himself is justified in the use of force only if
>
> the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person;
>
> or
>
> he in good faith withdraws from physical contact with the other person and indicates clearly to the other person that he desires to withdraw and terminate the use of force, but the other person continues or resumes the use of force."

Defense counsel failed to preserve his objection to the jury instruction in his post-trial motion. "Both a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis omitted.) (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) We acknowledge that certain instructions such as those involving elements of the offense, presumption of innocence, and burden of proof are essential to a fair jury trial. In these cases, the concept of waiver will not be employed to bar reversal. (*People v. Tucker* (1988), 176 Ill. App. 3d 209, 219-20, 530 N.E.2d 1079, 1086.) We agree with the decision in *Tucker*, where the court held that this particular instruction is not one of the

"essential" instructions required for a fair trial. (*Tucker*, 176 Ill. App. 3d at 220, 530 N.E.2d at 1086.) The second paragraph of this instruction is optional, and is only to be used when the court finds it is applicable. (See IPI Criminal 2d No. 24—25.09, Committee Note, at 557.) We find the court was justified in eliminating the second paragraph of the instruction.

 Finally, defendant argues that the court erred in denying a motion for mistrial, where the jury heard evidence concerning defendant's prior criminal conduct. The complained-of evidence reads, in relevant part:

> "Q. [Defense counsel:] So you didn't really know whose children it was, did you?
>
> A. [Prosecution witness Lilly Lewis:] I knew they were Larry Basham's children because I had seen those children before because I had had an occasion to speak with a couple of them at one time when I asked them to please leave the yard when they were throwing snowballs at Corey and Jessie and my cousins that live down the street, my cousin's children. And they were real small children, and they informed me that I couldn't come on their property either, then.
>
> * * *
>
> Q. [Prosecution:] Concerning Mr. Basham, did you know Mr. Basham prior to that date?
>
> A. [Prosecution witness Officer Hale:] Um, I am not acquainted with Mr. Basham. I had an incident sometime prior to meeting him on that occasion which involved a juvenile problem in Humboldt, and I briefly spoke—."

We find the testimony here to represent trivial incidents involving defendant's children, not evidence of prior criminal acts of the defendant. While no objection was made to the testimony of Lilly Lewis, counsel did object to Officer Hale's testimony and the jury was properly instructed to ignore the information volunteered in the answer shown above. We find the likelihood that this testimony served to inflame the jury to be slight and uphold the court's denial of defendant's motion for mistrial.

Affirmed.

GREEN, P.J., and STEIGMANN, J., concur.