THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT E. COLLINS, Defendant-Appellant.

Fourth District   No. 4—88—0731

Opinion filed August 24, 1989.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Neil Flynn, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

On May 31, 1988, defendant Robert E. Collins was charged by amended information with four counts of first degree murder alleging he, without lawful justification and with the intent to kill, shot and killed Mack Hammond on September 26, 1987 (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)). The trial court instructed a Sangamon County jury on the elements of first degree murder and the lesser included offenses of second degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)(2)) and involuntary manslaughter (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)). The jury acquitted defendant of the murder charges and convicted him of involuntary manslaughter (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)). The trial court sentenced defendant to 30 months' imprisonment. Defendant appeals arguing the State failed to prove beyond a reasonable doubt defendant was not justified in the use of force to defend his person (Ill. Rev. Stat. 1987, ch. 38, par. 7—1) and his dwelling (Ill. Rev. Stat. 1987, ch. 38, par. 7—2)). We affirm.

Defendant testified on his own behalf as follows. On September 26, 1987, defendant was in his apartment at 407 North Fifteenth Place in Springfield, Illinois, with his girlfriend Barbara Wicks. Defendant was watching television around 9:30 p.m. when someone knocked on the back door and Barbara Wicks answered it. A male voice asked whether Eve Wilson was inside. When Barbara replied in the negative, the male said he would not leave until Eve came outside. The man became verbally abusive and indicated he was going to enter the apartment to find Eve. Barbara then called defendant to the door.

Defendant found Curtis Moore, Mike Winters, and the victim, Mack Hammond, standing on his back porch. Winters appeared angry. He continued to verbally abuse Barbara and began to argue with defendant. The other men seemed calm. Although the individuals did not actually threaten defendant or strike him, at one point Winters pushed the screen door into the defendant, causing him to stumble into the apartment. Defendant then closed the screen door and went back to the kitchen window to look outside. The three men approached a car in the parking lot. Winters reached into the driver's

side and removed something from the vehicle. Defendant thought he saw a weapon, but could not be certain because it was dark. Defendant obtained his handgun and walked back to the door, where he saw Winters approaching while holding something in his hand. Defendant was afraid when he saw the men return to the door, because Winters was a reputed pimp who was known to carry guns and be violent. Defendant opened the door and fired one shot. The gun was pointed neither in the air nor at a specific person. The shot hit Mack Hammond in the chest, causing his death. Defendant did not intend to shoot anyone, rather he intended only to protect himself, Barbara, and his dwelling by frightening the three men away. After firing the shot, defendant ran into the apartment, threw the gun down, and went to his sister's house. Defendant was very frightened.

Detective Thomas Mann testified defendant was cooperative and voluntarily made a statement to the police following his arrest. Defendant had been crying prior to the interview and appeared to be quite upset. For the most part, defendant's statement to the police was identical to his testimony at trial. Defendant said he fired one shot to scare the men away as they were walking back to his door from the car. The defendant had said he thought he "saw something in their hand" when the police asked him if the men were armed. Defendant told the police he knew Winters but was not afraid of him.

Eve Wilson testified she had known Winters for six years and was his girlfriend at one time. Winters was a pimp who had a general reputation in the community for violent behavior. On several occasions he struck Eve with his gun. Eve had reported Winters' behavior to the police and filed 13 charges against him. The day after the shooting, Winters approached Eve and told her he had been looking for her to work as a prostitute. At that time, Winters threatened Eve's husband with a gun, but no shooting took place. Eve did not report the incident to the police.

Michael Winters testified that on September 26, 1987, he had gone to a housing project in Springfield to look for a male named Tracy Johnson. Curtis Moore knocked on the door at 407 North Fifteenth Place and began to argue with Barbara Wicks. Winters then went to the door and also argued with Barbara about whether or not they were inquiring at the wrong address. Both exchanged obscene remarks. After Barbara called defendant to the door, he and Winters argued for about two minutes. During the argument, the victim walked up behind Winters to ask him for money. When Winters turned to talk to the victim, defendant closed the door. Winters, Moore, and the victim were talking when defendant reopened the

door and fired three or four shots at close range. Winters was giving $3 to the victim when defendant fired the fatal shot. Winters denied that he was looking for Eve Wilson, that he threatened Barbara or defendant either verbally or physically, that he returned to his car after defendant initially shut the door, or that he was armed.

The jury found defendant guilty of involuntary manslaughter and he was sentenced to 30 months' imprisonment.

■ On appeal defendant contends he was not proved guilty beyond a reasonable doubt. Section 9—3(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)) provides:

> "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

■ Defendant argues he reasonably believed he was justified in using deadly force in defense of himself, Barbara, and his dwelling. Section 7—1 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 7—1) provides:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

Section 7—2 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 7—2) provides:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if:
>
> (a) The entry is made or attempted in a violent, riotous, or tumultuous manner, and he reasonably believes that such force is necessary to prevent an assault upon, or offer of personal violence to, him or another then in the dwelling."

■ The determinative question in this case under either section is whether defendant's belief it was necessary to use deadly force was reasonable under the circumstances. (*People v. Sawyer* (1986), 115 Ill.

2d 184, 503 N.E.2d 331, *cert. denied* (1987), 482 U.S. 930, 96 L. Ed. 2d 702, 107 S. Ct. 3216.) It is a question of fact for the jury to decide whether the defendant's subjective belief he was justified in using deadly force was reasonable. (*Sawyer*, 115 Ill. 2d at 193, 503 N.E.2d at 336.) A court will not disturb a jury verdict on appeal " 'unless the evidence is palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory that it justifies entertaining a reasonable doubt of the defendant's guilt.' " *People v. Evans* (1981), 87 Ill. 2d 77, 86, 429 N.E.2d 520, 524, quoting *People v. Jordan* (1960), 18 Ill. 2d 489, 492-93, 165 N.E.2d 296, 298.

■ The argument contained in the appellate brief submitted by defendant implies he did not act recklessly when he fired a shot out his back door to frighten away Winters and his companions. Defendant relies on *People v. Post* (1968), 39 Ill. 2d 101, 233 N.E.2d 565, wherein our supreme court held the shooting of a pistol toward the ground to discourage the return of a prowler located some distance away was not *per se* reckless behavior within the meaning of the involuntary manslaughter statute. *Post* is easily distinguishable from this case on the facts. In *Post* the prowler had retreated and was driving away in a car when the defendant fired a shot toward the ground to discourage the intruder from returning. Here, based on his own testimony, defendant fired his gun at point-blank range from his back door as the three men were approaching. He did not point the gun in the air or at the ground. The defendant argues he justifiably fired his gun at the men because he reasonably believed Winters and his companions were attempting to enter his dwelling to harm either him or Barbara. The question becomes whether defendant's belief it was necessary to directly shoot at the men at close range was reasonable under the circumstances.

Defendant said he saw Winters remove what defendant thought was a gun from his car. Because it was dark, defendant could not be sure Winters had a gun, but he was known to carry one. Defendant did not tell the police he saw Winters remove something from his car, he merely said he thought he "saw something in their hand" as the men were walking back up to the door. Defendant testified he was aware of Winters' reputation in the community for violence; however, after the shooting, defendant told the police he was not afraid of Winters. Although none of the men physically threatened defendant or Barbara or attempted to enter the apartment, defendant fired at them at point-blank range without warning. The victim died from a single gunshot wound to the chest.

The jury rejected defendant's affirmative defenses and found him

guilty of involuntary manslaughter beyond a reasonable doubt. Our review of the record reveals there was sufficient evidence for the jury to conclude it was not reasonably necessary for defendant to fire a gun at close range out his back door in the direction of three men in order to prevent what he believed was the threat of imminent death or great bodily harm to himself or Barbara or to prevent an assault upon his dwelling. We find no evidence before us that is palpably contrary to the verdict so as to raise a reasonable doubt of the defendant's guilt.

The judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.