THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD BRACE, Defendant-Appellant.

Third District    No. 3—90—0498

Opinion filed December 18, 1991.

Karen Munoz, of State Appellate Defender's Office, of Springfield, and Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

William Herzog, State's Attorney, of Kankakee (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

The defendant, Donald Brace, was convicted of attempted murder (Ill. Rev. Stat. 1989, ch. 38, par. 8—4(a)) and sentenced to 12 years' imprisonment. On appeal, he contends that the State failed to prove beyond a reasonable double that he was not justified in the use of deadly force in defense of his son and that the trial judge abused his discretion in imposing sentence. We affirm.

Shortly before 2 a.m. on January 1, 1987, St. Anne police officers Steve Abrassart and Michael Caraway observed a blue pickup truck leave the St. Anne American Legion. After it failed to stop at a stop sign, the officers, driving in a marked squad car, activated their lights and siren. The vehicle proceeded several blocks to the defendant's home before it came to a stop. Paul Brace, the defendant's 20-year-old son, was the driver of the pickup. Officer Caraway told Paul Brace that he was going to be issued a ticket for running a stop sign. After a brief argument, Paul Brace accompanied the officers to the squad car. Once inside the car, the officers noticed a strong odor of alcohol emanating from Paul Brace. They advised him that he was also under arrest for driving under the influence (DUI). At that point, Paul Brace tried to leave the squad car. Officer Caraway ran around to Brace's door in an attempt to keep him in the car, but Brace pushed Caraway and began running from the squad car. Officer Abrassart then ran after and tackled Paul Brace. Both men fell to the ground with Abrassart on top of Paul Brace. As they landed on the ground, Paul Brace cut his face on the gravel in the roadway and his forehead began bleeding. Abrassart attempted to handcuff Paul Brace's hands behind him as Brace struggled. Paul's parents came out of the house, approached the scene and asked Abrassart what he was doing.

The officers told Paul's parents that their son was under arrest for DUI. As the defendant reached out to push Abrassart off of Paul, Caraway stepped in between. Caraway and the defendant engaged in a shoving match. Pat Brace, defendant's wife, told the defendant to get his gun. The defendant then said, "I'm going to get my gun and kill these motherfuckers." He started running for the house.

Abrassart instructed Caraway to call for backup. Caraway stood at the open driver's door to the squad car, grabbed the microphone

and requested a backup, indicating that they had a fight going on and that he believed a man may be going into the house to get a gun.

The defendant then emerged from the front door of his house and stood on the porch with a .22 caliber rifle pointed at Caraway. The defendant fired three shots, and Caraway felt a sharp pain in his right arm. He dropped the microphone, pulled out his service revolver and shot it towards the defendant on the porch. When Abrassart heard Caraway's weapon clicking and saw that the defendant was still standing on the porch aiming the rifle at Caraway, Abrassart pulled his weapon and fired three shots at the defendant. The defendant was struck once in the hand and twice in the abdomen.

Pat Brace went to the porch to check on her husband and saw a gun there. Defendant told her to move the gun, and she took it into the house. Shortly after the occurrence, People's exhibit 1, an automatic .22 caliber rifle, was found beneath the bed in defendant's bedroom.

Expert testimony adduced at the trial supported the policemen's version of the occurrence. The bullet that severely injured Caraway's right arm passed through his body. A second shot also hit Caraway, passing through his vest embedding in his holster. Although it was not clearly identifiable, the forensic scientist believed it to be a .22 caliber bullet or projectile. The bullet removed from the defendant Donald Brace was identified as having come from Officer Abrassart's weapon. Additionally, two spent .22 caliber casings were found and determined to have come from the defendant's rifle.

We first address the defendant's contention that the State failed to prove beyond a reasonable doubt that he was not justified in the use of deadly force in defense of his son. Upon review, all of the evidence is to be considered in the light most favorable to the prosecution. The reviewing court has the power to reverse only if it can be concluded that no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In this respect, the trier of fact is responsible for determining the credibility of the witnesses and the weight to be given their testimony. *People v. Maloney* (1990), 201 Ill. App. 3d 599, 558 N.E.2d 1277.

The jury was specifically instructed on the defendant's theory that he was acting in defense of another. In addition, the jury was specifically instructed that to find the defendant guilty of attempted murder, it must find, beyond a reasonable doubt, that the defendant was not justified in using the force which he used. Thus, the jury was properly instructed that the State had the burden of proving beyond a reason-

able doubt that the defendant was not justified in the use of deadly force.

Whether the defendant's subjective belief that he was justified in using deadly force was reasonable is a question of fact for the jury to decide. (*People v. Collins* (1989), 187 Ill. App. 3d 531, 535, 543 N.E.2d 572, 574.) A jury may consider the defendant's act of arming himself before confronting the victim in rejecting the defendant's claim that he was acting in self-defense. (*People v. Rosas* (1977), 52 Ill. App. 3d 555, 557, 367 N.E.2d 986, 988.) A person may use deadly force to protect himself or another only if he reasonably believes that he or the other person is in imminent danger of death or great bodily harm. (Ill. Rev. Stat. 1989, ch. 38, par. 7—1.) The test is what the defendant, as a reasonable man, believed under the circumstances. *People v. Rodriguez* (1989), 187 Ill. App. 3d 484, 489, 543 N.E.2d 324, 327.

The defendant observed one police officer struggling with his son in an attempt to handcuff him. Defendant was kept from interfering in the struggle by a second police officer. The defendant admitted that neither police officer had his weapon drawn. Defendant did not directly testify to seeing either officer strike his son. The defendant did not testify that he believed that his son was in imminent danger of death or great bodily harm.

■ Given the circumstances of this case, a rational trier of fact could conclude, beyond a reasonable doubt, that the defendant was not justified in the use of deadly force, *i.e.*, in going into his home, obtaining a loaded rifle, aiming it at one of the police officers, and discharging it at the police officer. Therefore, we will not disturb the jury's finding.

The defendant next argues that the trial court abused its discretion in sentencing him to 12 years' imprisonment. He notes that at the time of the offense he was 48 years old, was under strong provocation, had a limited criminal record, and was gainfully employed. He also points out that his criminal conduct was the result of circumstances unlikely to recur.

We begin by noting that a trial judge's determination of a proper sentence will not be disturbed absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Furthermore, a reviewing court is not a sentencing court and may not substitute its judgment for that of the trial court merely because it would have balanced the appropriate factors differently. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

■ Attempted murder is a Class X felony, which carries a mandatory term of imprisonment of between 6 and 30 years. (Ill. Rev. Stat.

1989, ch. 38, pars. 8—4(c)(1), 1005—8—1(a)(3).) The defendant was sentenced to a 12-year term of incarceration. This is at the low end of the 6- to 30-year term prescribed for the offense. It is clear from the trial court's comments at the sentencing hearing that it weighed and considered both the mitigating and aggravating factors. In light of the fact that the defendant caused serious harm to a police officer by shooting him while he was in the performance of his official duties, we find that the trial court did not abuse its discretion.

Finally, we address the defendant's argument that the prosecutor erred in recommending a sentence in excess of the minimum allowed for the offense. Prior to trial, the parties entered into a plea agreement in which defendant pleaded guilty to attempted murder in exchange for the minimum sentence of six years. The defendant subsequently withdrew his guilty plea and chose to go to trial. The defendant contends that it was improper for the prosecutor to recommend a longer sentence upon conviction than the parties had agreed to in the earlier plea agreement.

■■ It is not improper for a prosecutor to seek a penalty greater than that offered in plea discussions. (*People v. Lewis* (1981), 88 Ill. 2d 129, 149, 430 N.E.2d 1346, 1355.) Moreover, the fact that the trial judge imposes a sentence greater than that imposed upon the acceptance of a guilty plea does not, standing alone, taint the sentence. (*People v. Morgan* (1974), 59 Ill. 2d 276, 281, 319 N.E.2d 764, 767.) In the instant case, the prosecutor, having recognized the earlier proffered plea, cited factors in aggravation and asked only that the trial judge impose a "moderate term of imprisonment." The trial judge noted that he was not the judge who took the prior plea, that many factors go into a plea negotiation, and that he was imposing sentence based on the individual facts of this case.

The judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

BARRY and HAASE, JJ., concur.